ISAAC R. SMITH, OWNER OF THE SLOOP VOLANT, PLAINTIFF IN ERROR, *v.* THE STATE OF MARYLAND.

The soil below low-water mark in the Chesapeake Bay, within the boundaries of Maryland, belongs to the State, subject to any lawful grants of that soil by the State or the sovereign power which governed its territory before the Declaration of Independence.

But this soil is held by the State not only subject to, but in some sense in trust for, the enjoyment of certain public rights, among which is the common liberty of taking fish, as well shell-fish as floating fish.

The State has a right to protect this fishery by making it unlawful to take or catch oysters with a scoop or drag, and to inflict the penalty of forfeiture upon the vessel employed in this pursuit.

Such a law is not repugnant to the constitution of the United States, although the vessel which is forfeited is enrolled and licensed for the coasting trade under an act of congress.

Neither is it repugnant to the constitution as interfering with the admiralty and maritime jurisdiction of the judicial power of the United States.

Nor is the law liable to an objection that no oath is required before issuing a warrant to arrest the vessel. That clause of the constitution refers only to process issued under the authority of the United States.

THIS case was brought up by writ of error from the circuit court of the second judicial circuit of the State of Maryland, in and for Anne Arundel county.

The case is stated in the opinion of the court.

It was argued by *Mr. Latrobe*, for the plaintiff in error, and *Mr. Campbell*, for the State of Maryland.

*Mr. Latrobe* contended that all the laws of Maryland, namely: 1833, ch. 254; 1837, ch. 310; 1846, ch. 38; 1849, ch. 217, and a law passed in 1854, should be taken in connection as forming a body of legislation in *pari materia.* 12 How. 299.

These laws were said to be unconstitutional on these grounds, namely:—

1. Because they are repugnant to the 8th section of the first

article of the constitution of the United States, which grants to congress the power to regulate commerce with foreign nations, and among the several States, and with the Indian tribes.

2. Because they are repugnant to the 2d section of the third article, which declares that the judicial powers of the United States shall extend to cases of admiralty and maritime jurisdiction.

3. Because the said laws contain (with the exception of the law of 1854) no provision for an oath or affirmation as to probable cause before issuing a warrant, nor was such oath or affirmation, in fact, made, or any warrant issued prior to the seizure.

4. Because the said laws are repugnant to the second section of article fourth, which declares that the citizens of each State shall be entitled to all privileges and immunities of citizens in the several States.

*Mr. Campbell* made the following points:—

1. That the soil of the Chesapeake Bay is vested in the State of Maryland as the successor of the lord proprietary, and that the object and effect of the laws assailed is to protect the oysters while fixed in such soil, and for which it alone has title to them before they become articles of commerce; and that the protection thus extended does not obstruct the free use of the waters of Maryland for commerce or navigation. Browne and Kennedy, 5 Harris & Johnson, 195; Casey and Inloes, 1 Gill, 512; Corfield and Coryell, 4 Wash. C. C. R. 371; Bennett and Boggs, Baldwin, 72; Martin and Waddell, 16 Pet. 367; 3 Kent's Commentaries, 439.

2. That the offences punished by the laws in question are not within the admiralty or maritime jurisdiction of the United States. Corfield and Coryell, (above cited;) United States *v.* Bevans, 3 Wheat. 386; 2 Brown's Civ. and Adm. Law, Appendix, 420.

Mr. Justice CURTIS delivered the opinion of the court.

This is a writ of error to the circuit court for Anne Arundel county, in the State of Maryland, under the 25th section of the judiciary act of 1789. It appears by the record that the plaintiff in error, being a citizen of the State of Pennsylvania, was the owner of a sloop called The Volant, which was regularly enrolled at the port of Philadelphia, and licensed to be employed in the coasting trade and fisheries; that, in March, 1853, the schooner was seized by the sheriff of Anne Arundel county, while engaged in dredging for oysters in the Chesapeake Bay, and was condemned to be forfeited to the State of Maryland,

by a justice of the peace of that State, before whom the proceeding was had; that on appeal to the circuit court for the county, being the highest court in which a decision could be had, this decree of forfeiture was affirmed; and that the plaintiff in error insisted, in the circuit court, that such seizure and condemnation were repugnant to the constitution of the United States.

This vessel being enrolled and licensed, under the constitution and laws of the United States, to be employed in the coasting trade and fisheries, and while so employed having been seized and condemned under a law of a State, the owner has a right to the decision of this court upon the question, whether the law of the State, by virtue of which condemnation passed, was repugnant to the constitution or laws of the United States.

That part of the law in question containing the prohibition and inflicting the penalty, which appears to have been applied by the state court to this case, is as follows: (1833, ch. 254:)—

" *An Act to prevent the Destruction of Oysters in the Waters of this State.*

" Whereas, the destruction of oysters in the waters of this State is seriously apprehended, from the destructive instrument used in taking them, therefore—

- Sec. 1. *Be it enacted by the general assembly of Maryland,* That it shall be unlawful to take or catch oysters in any of the waters of this State with a scoop or drag, or any other instrument than such tongs and rakes as are now in use, and authorized by law; and all persons whatever are hereby forbid the use of such instruments in taking or catching oysters in the waters of this State, on pain of forfeiting to the State the boat or vessel employed for the purpose, together with her papers, furniture, tackle, and apparel, and all things on board the same." ·

The question is, whether this law of the State afforded valid cause for seizing a licensed and enrolled vessel of the United States, and interrupting its voyage, and pronouncing for its forfeiture. To have this effect, we must find that the State of Maryland had power to enact this law.

The purpose of the law is, to protect the growth of oysters in the waters of the State, by prohibiting the use of particular instruments in dredging for them. No question was made in the court below whether the place in question be within the territory of the State. The law is, in terms, limited to the waters of the State. If the county court extended the operation of the law beyond those waters, that was a distinct and substantive ground of exception, to be specifically taken and presented on the record, accompanied by all the necessary facts to enable this court to determine whether a voyage of a vessel,

licensed and enrolled for the coasting trade, had been interrupted by force of a law of a State while on the high seas, and out of the territorial jurisdiction of such State.

To present to this court such a question upon a writ of error to a state court, it is not enough that it might have been made in the court below; it must appear by the record that it was made, and decided against the plaintiff in error.

As we do not find from the record that any question of this kind was raised, we must consider that the acts in question were done, and the seizure made, within the waters of the State; and that the law, if valid, was not misapplied by the county court by extending its operation, contrary to its terms, to waters without the limits of the State. What we have to consider under this writ of error is, whether the law itself, as above recited, be repugnant to the constitution or laws of the United States.

It was argued that it is repugnant to that clause of the constitution which confers on congress power to regulate commerce, because it authorizes the seizure, detention, and forfeiture of a vessel enrolled and licensed for the coasting trade, under the laws of the United States, while engaged in that trade.

But such enrolment and license confer no immunity from the operation of valid laws of a State. If a vessel of the United States, engaged in commerce between two States, be interrupted therein by a law of a State, the question arises whether the State had power to make the law by force of which the voyage was interrupted. This question must be decided, in each case, upon its own facts. If it be found, as in Gibbon *v*. Ogden, 9 Wheat. 1, that the State had not power to make the law, under which a vessel of the United States was prevented from prosecuting its voyage, then the prevention is unlawful, and the proceedings under the law invalid. But a State may make valid laws for the seizure of vessels of the United States. Such, among others, are quarantine and health laws.

In considering whether this law of Maryland belongs to one or the other of these classes of laws, there are certain established principles to be kept in view, which we deem decisive.

Whatever soil below low-water mark is the subject of exclusive propriety and ownership, belongs to the State on whose maritime border, and within whose territory it lies, subject to any lawful grants of that soil by the State, or the sovereign power which governed its territory before the declaration of independence. Pollard's Lessee *v*. Hagan, 3 How. 212; Martin *v*. Waddell, 16 Pet. 367; Den *v*. The Jersey Co. 15 How. 426.

But this soil is held by the State, not only subject to, but in some sense in trust for, the enjoyment of certain public rights,

among which is the common liberty of taking fish, as well shell-fish as floating fish. Martin *v.* Waddell; Den *v.* Jersey Co.; Corfield *v.* Coryell, 4 Wash. R. 376; Fleet *v.* Hagemen, 14 Wend. 42; Arnold *v.* Munday, 1 Halst. 1; Parker *v.* Cutler Milldam Corporation, 2 Appleton (Me.) R. 353; Peck *v.* Lock-wood, 5 Day, 22.; Weston et al. *v.* Sampson et al. 8 Cush. 347. The State holds the propriety of this soil for the conservation of the public rights of fishery thereon, and may regulate the modes of that enjoyment so as to prevent the destruction of the fishery. In other words, it may forbid all such acts as would render the public right less valuable, or destroy it altogether. This power results from the ownership of the soil, from the legislative jurisdiction of the State over it, and from its duty to preserve unimpaired those public uses for which the soil is held. Vattel, b. 1, c. 20, s. 246; Corfield *v.* Coryell, 4 Wash. R. 376. It has been exercised by many of the States. See Angell on Tide Waters, 145, 156, 170, 192-3.

The law now in question is of this character. Its avowed, and unquestionably its real, object is to prevent the destruction of oysters within the waters of the State, by the use of particular instruments in taking them. It does not touch the subject of the common liberty of taking oysters, save for the purpose of guarding it from injury, to whomsoever it may belong, and by whomsoever it may be enjoyed. Whether this liberty belongs exclusively to the citizens of the State of Maryland, or may lawfully be enjoyed in common by all citizens of the United States; whether this public use may be restricted by the State to its own citizens, or a part of them, or by force of the Constitution of the United States must remain common to all citizens of the United States; whether the national government, by a treaty or act of congress, can grant to foreigners the right to participate therein; or what, in general, are the limits of the trust upon which the State holds this soil, or its power to define and control that trust, are matters wholly without the scope of this case, and upon which we give no opinion.

So much of this law as is above cited may be correctly said to be not in conflict with, but in furtherance of, any and all public rights of taking oysters, whatever they may be; and it is the judgment of the court, that it is within the legislative power of the State to interrupt the voyage and inflict the forfeiture of a vessel enrolled and licensed under the laws of the United States, for a disobedience, by those on board, of the commands of such a law. To inflict a forfeiture of a vessel on account of the misconduct of those on board—treating the thing as liable to forfeiture, because the instrument of the offence is within established principles of legislation, which have been applied

by most civilized governments. The Malek Adhel, 2 How. 233–4, and cases there cited. Our opinion is, that so much of this law as appears by the record to have been applied to this case by the court below, is not repugnant to the clause in the constitution of the United States which confers on congress power to regulate commerce.

It was also suggested, that it is repugnant to the second section of the third article, which declares that the judicial power of the United States shall extend to all cases of admiralty and maritime jurisdiction. But we consider it to have been settled by this court, in United States *v.* Bevans, 3 Wheat. 386, that this clause in the constitution did not affect the jurisdiction, nor the legislative power of the States, over so much of their territory as lies below high-water mark, save that they parted with the power so to legislate as to conflict with the admiralty jurisdiction or laws of the United States. As this law conflicts neither with the admiralty jurisdiction of any court of the United States conferred by congress, nor with any law of congress whatever, we are of opinion it is not repugnant to this clause of the constitution. The objection that the law in question contains no provision for an oath on which to found the warrant of arrest of the vessel, cannot be here maintained. So far as it rests on the constitution of the State, the objection is not examinable here, under the twenty-fifth section of the judiciary act. If rested on that clause in the constitution of the United States which prohibits the issuing of a warrant but on probable cause supported by oath, the answer is, that this restrains the issue of warrants only under the laws of the United States, and has no application to state process. Barron *v.* Mayor, &c. of Baltimore, 7 Pet. 243; Lessee of Livingston *v.* Moore et al. 7 Pet. 469; Fox *v.* Ohio, 5 How. 410.

The judgment of the circuit court of Maryland in and for Anne Arundel county is affirmed, with costs.