### OCEAN INDUSTRIES, Inc., v. GREENE et al.

(District Court, N. D. California, S. D. November 13, 1926.)

No. 1784.

**Fish** ⚖8—**Federal court has no jurisdiction of bill against state fish and game commission for interference with reduction plant in bay within state boundaries (Const. Cal. art. 21, § 1, and article 4, § 25½).**

Where state of California included in its boundaries harbors and bays under Const. Cal. art. 21, § 1, and included bay within fish and game districts, as provided by article 4, § 25½, there being no affirmative action of Congress taking such control, federal court has no jurisdiction of bill against officers of fish and game commission for interfering with operation of reduction plant within bay.

In Equity. Suit by the Ocean Industries, Inc., against B. D. Marx Greene, individually and as executive officer of the Board of Fish and Game Commissioners of the State of California and others. On motion to dismiss. Motion granted.

Loucks & Phister, of San Pedro, Cal., and Cushing & Cushing, of San Francisco, Cal., for plaintiff.

B. D. Marx Greene and Ira S. Lillick, both of San Francisco, Cal., for defendants.

ST. SURE, District Judge. Plaintiff, a corporation organized and existing under the laws of the state of Nevada, files a bill in equity seeking an injunction and damages against certain members and officers of the board of fish and game commissioners of the state of California.

Plaintiff is the owner of the Peralta, a vessel of more than 6,000 tons burden, equipped with machinery and operated as a reduction plant in Monterey Bay, Cal. Plaintiff chartered two fishing boats, and employed fisherman to catch fish and deliver them to the Peralta, where they were made into fish oil and fish meal. No sooner had the reduction plant commenced operating than the fish and game commission of the state of California took action to stop what it contends is an unlawful destruction and diversion of food fish. Arrests of fishermen were made for violation of state fish and game laws, and an injunction was sought and obtained in a state court against plaintiff herein, restraining it from operating its reduction plant in the waters of Monterey Bay.

The question presented to this court for decision, upon motion to dismiss, is whether or not plaintiff is operating its reduction plant within the jurisdiction of the state of California. The bill alleges that the exact position of the Peralta is latitude 36 degrees 53 minutes north, longitude 121 degrees 56 minutes west, which, it is admitted, is well within the indentation of the bay and the waters bounded by the shore line of Monterey Bay and a straight line drawn between headlands Point Pinos and Point Santa Cruz. The fish, it is also admitted, are caught within those waters.

It is conceded that fish in the high seas are the property of whoever first can take them; that the territorial jurisdiction of the state of California extends only three miles into the waters of the Pacific Ocean from low-water mark, and that the people of the state have a qualified property right in the fish while in those waters; that beyond the three-mile limit the state of California has no right in or to the fish, nor has it any right to interfere with any fishing operations upon the high seas beyond that line; that the federal government has never assumed to regulate and control the handling of fish for the prevention of waste, nor to regulate or control the use of fish or fishery products for reduction purposes in Monterey Bay, while the state of California, by suitable legislation, has assumed and is asserting such jurisdiction.

Monterey Bay is about 19 miles across headlands, and its indentation is about 9 miles. Plaintiff contends that, because of the great breadth at the mouth of the bay and its shallowness, it is in fact open sea, and has been designated a bay merely for convenience.

Plaintiff argues that, if the bay exceeds 6 miles in width in a straight line measured from headland to headland, it is not territorial water, but open sea. Monterey Bay, as we have seen, is 19 miles across from headland to headland. There is authority sup-

porting the proposition that, to constitute a bay under the law, there is no limit to distance between headlands fixed at an arbitrary limit of 6 miles. A statute of Maryland was enacted for the purpose of preventing the destruction of oysters in the waters of that state, and a vessel was seized while dredging for oysters in Chesapeake Bay. The bay is 12 miles across at the ocean. The statute was upheld. Smith v. Maryland, 18 How. 71, 15 L. Ed. 269. Conception Bay, more than 20 miles wide between promontories, was held to be part of the territory of Newfoundland. Direct U. S. Cable Co. v. Anglo American Tel. Co., L. R. 2 App. Cas. 394. Moray Firth, more than three miles from shore, held British territory. Mortensen v. Peters, 14 S. T. L. 227. So, too, the United States include in their territorial waters Chesapeake Bay, the entrance to which is 12 miles from headland to headland, Delaware Bay, which is 18 miles wide, and Cape Cod Bay, which is 32 miles wide, as well as other inlets of a similar kind. Pitt Corbett, Leading Cases on International Law (4th Ed.) p. 143.

The boundary of the state of California is defined in the Constitution of California (section 1 of article 21), and includes "all the islands, harbors, and bays along and adjacent to the coast." The quoted language declares in effect that Monterey Bay is a part of the territory of the state.

In addition to the constitutional definition of the state's boundary as including all bays, there is also section 25½ of article 4 of the state Constitution, which provides that "the Legislature may provide for the division of the state into fish and game districts, and may enact such laws for the protection of fish and game therein as it may deem appropriate to the respective districts." In accordance with this constitutional authorization, the Legislature has adopted several comprehensive acts, dividing the state into districts and providing for the protection and conservation of fish and game. District No. 17, defendants contend, includes all of Monterey Bay, while plaintiff points out that the language designating the boundaries of the district admits of no such generous interpretation. The boundaries of the district, as including all of the bay, may not be clearly described, but under the circumstances I feel constrained to accept the defendants' claim in that regard.

I am therefore of the opinion, based upon the facts of the instant case, it appearing that the state, by its Constitution has declared Monterey Bay within its boundary, having by suitable legislative enactments assumed and exercised jurisdiction over the waters and fisheries in controversy, there being no affirmative action of Congress taking such control, that this court is without jurisdiction to further proceed in the matter.

It follows that the motion to dismiss must be granted; and it is so ordered.