**MIRKOVICH v. MILNOR et al.**
**No. 21624 W.**

District Court, N. D. California, S. D.
Sept. 3, 1940.

Andersen & Resner, of San Francisco, Cal., for plaintiff.

Earl Warren, Atty. Gen., W. T. Sweigert, Asst. Atty. Gen., and Ward Sullivan, Deputy Atty. Gen., for defendants.

Before HEALY, Circuit Judge, and ST. SURE and WELSH, District Judges.

WELSH, District Judge.

Plaintiff seeks to enjoin the defendants, members of the Fish and Game Commission of the State of California, from enforcing against him the provisions of Section 1110 of the Fish and Game Code of the State of California, St.1939, p. cxxxix, on the ground that this section is violative of the due process, equal protection of laws and privileges and immunities clauses of the Fourteenth Amendment to the Federal Constitution; and that it also constitutes an unlawful interference with interstate commerce. Defendants have interposed a motion to dismiss this action on the ground that plaintiff's complaint fails to state a claim upon which relief can be granted. The matter is now before the Court on plaintiff's application for a preliminary injunction and defendants' motion to dismiss.

The allegations of plaintiff's complaint, material for the determination of these motions, are, in substance, as follows: That plaintiff is the owner and operator of a fishing vessel worth the sum of $45,000; that for some years past, plaintiff has engaged in taking fish and sardines out of the waters of the Pacific Ocean off the coast of California, Washington and Oregon, and from points more than three miles westerly from the coastline of California, and delivering the same beyond the territorial limits of the State of California and to points on the shores of California. That in 1938, the State of California enacted the provisions of Section 1110 of the Fish and Game Code, as follows:

"No person shall use or operate or assist in using or operating in this State or the waters thereof, any boat or vessel used in connection with fishing operations irrespective of its home port or port of registration, which fishing boat or vessel delivers or by which there is delivered to any point or place other than within this State any fish, mollusks or crustaceans which are caught in, or taken aboard said boat or vessel from, the waters of the Pacific Ocean within this State or on the high seas or elsewhere, unless a permit authorizing the same shall have been issued by the Fish and Game Commission.

"Where it appears to the commission that such permit will not tend to prevent, impede or obstruct the operation, enforcement or administration of this code or any provision thereof, and will not tend to result in fish, mollusks or crustaceans in the waters of this State being taken or used otherwise than is authorized by this code, the commission may issue revocable permits under such rules and regulations and upon such terms and conditions as it may prescribe, to deliver fish, mollusks or crustaceans by the use of such boat or vessel outside of this State, provided that nothing herein shall authorize the transportation or carrying out of this State or any district thereof, of any fish, mollusks or crustaceans where the same is prohibited by law, and no permit shall be issued which may tend to deplete any species of fish, mollusk or crustacean, or result in waste thereof. Any person who uses or operates or assists in using or operating any boat or vessel in violation of the provisions of this section is guilty of a misdemeanor and such boat or vessel and the net, gear or other equipment of said boat or vessel is a public nuisance and shall be forfeited. It is the duty of every person authorized to make an arrest for the violation of any of the provisions of this code, to seize and keep such boat, vessel, net, gear or other equipment and to report such seizure to the commission. The commission shall thereupon commence, in the superior court of the county or city and county in which or nearest to which the seizure is made, proceedings for forfeiture of the seized property for its use in violation of this section, and such proceeding shall be had in the manner and according to the procedure provided by section 845 of this code for the forfeiture of nets."

Plaintiff alleges that since the enactment of the foregoing law, he has engaged in catching and delivering fish beyond the territorial waters of California without any permit; that he is about to engage in such fishing operations and has agreed to deliver the fish and sardines caught by him to a vessel beyond the territorial jurisdiction of California; that during the course

of such fishing operations, it will become necessary for plaintiff to bring his vessel to ports of the state of California for such purposes as reconditioning and repairs, and, on information and belief, that when he brings his vessel within state waters, the same will be seized and forfeited by the State of California, pursuant to Section 1110 of the Fish and Game Code.

Plaintiff does not claim that he applied for and was denied a permit to bring his vessel within the territorial waters of California. His position is that he has an absolute right to operate his vessel within the waters of the State of California without being required to apply for a permit; that Section 1110 of the Fish and Game Code, in requiring a permit for the operation within the state's jurisdiction of fishing vessels engaged in fishing operations entirely beyond that jurisdiction, is, to that extent, unconstitutional on its face.

One of plaintiff's grounds of attack is that the measure in question constitutes an interference with interstate and foreign commerce in attempting to regulate fishing operations beyond its jurisdiction. Section 1110 of the Fish and Game Code does not purport, by its terms, to forbid or control fishing operations beyond the state's jurisdiction. It relates solely to the operation, within state waters, of fishing vessels engaged in delivering their catch outside the state, regardless of where the fishing occurs. It appears from the provisions of the law in question that the object of its enactment was not to affect fishing operations beyond the state's jurisdiction, but rather to protect and conserve the state's fisheries from possible depletion and waste by virtue of uncontrolled taking of fish from the waters of the state to points beyond its jurisdiction.

While the permit required is one which, in terms, authorizes the delivery of fish outside state limits, its actual effect is upon the operation, within state waters, of fishing vessels delivering their catch beyond the state's jurisdiction, and not upon the delivery itself. The statute cannot be fairly construed, on its face, to be an illegal attempt by the state to extend its legislation beyond the boundaries of its jurisdiction since it clearly appears therefrom that the acts prohibited without, and allowed with, a permit, are acts which are to be performed within the territorial jurisdiction of the state. So far as Section 1110 of the Fish and Game Code is concerned, plaintiff can fish to any extent he wishes beyond the three mile limit without violating any of its provisions which would subject his boat to seizure and forfeiture. That plaintiff might find himself unable to carry on his fishing operations beyond the state's jurisdiction without entering and operating his boat within state waters does not, for that reason, render Section 1110 void on its face in making it necessary for him to apply for a permit so to do, if the provisions of that section requiring such permit are sustainable as a proper exercise by the state of its police power in the conservation of its fisheries. Section 1110 does not, by any reasonable implication, purport to regulate foreign commerce in fish, or to control the movement of fishing vessels in such foreign commerce. It does not affect the importation of fish into the state. And to the extent that it affects any exportation of fish taken from the waters of the state, its action is fully justified on the principle that a state is the owner of its fisheries for the benefit of its citizens and can impose any condition on the taking and use, after taking, of fish within its waters, reasonably necessary for the conservation of its fisheries for the beneficial use of its own citizens. Geer v. State of Connecticut, 161 U.S. 519, 16 S.Ct. 600, 40 L.Ed. 793.

If that portion of Section 1110 of the Fish and Game Code attacked by plaintiff is sustainable as a proper exercise by the state of its police power, the contention that its enforcement would indirectly affect interstate commerce and that it constitutes a violation of the guarantees of the 14th Amendment to the United States Constitution cannot be maintained. This principle is too well settled to require a reference to supporting authorities.

That a state has the power to enact legislation for the conservation of its fisheries is, of course, not open to question. Any law having a reasonable relation to such object and its accomplishment, and which is not unduly oppressive upon individuals must be upheld as a legitimate exercise of the state's police power without inquiry into the possible soundness of legislative judgment in the premises, and without consideration for possible individual hardships. Lawton v. Steele, 152 U.S. 133, 14 S.Ct. 499, 38 L.Ed. 385; Bayside Fish Flour Co. v. Gentry, 297 U.S. 422, 56 S.Ct. 513, 80 L.Ed. 772.

Section 1110 of the Fish and Game Code contemplates the granting of permits for the operation of fishing boats in state waters which deliver their catch beyond the state's jurisdiction, whenever the issuance of such permit "will not tend to prevent, impede or obstruct the operation, enforcement or administration" of the Fish and Game Code and will not tend to result in the illegal taking of fish from the waters of the state, or in the depletion or waste of any species of fish. The object of the requirement for a permit to operate a fishing vessel in state waters is, by necessary implication from the specified conditions precedent to its granting, the conservation of the state's fisheries and their protection from possible depletion and waste. Plaintiff does not claim that the real purpose of such requirement is otherwise. While it may be said that the fish and game commission is granted considerable latitude in the matter of granting or withholding permits, it cannot be inferred therefrom that the commission is thereby given arbitrary or discriminatory powers; nor does it afford any basis for plaintiff's contention that the statute is an attempt to regulate fishing wherever it occurs. It is assumed by the terms of Section 1110 that the commission will exercise its discretionary power in consonance with the legitimate objects towards which the legislation is apparently aimed. This is a matter relating to the constitutional administration of the law, and not to its validity as it stands, and is not the subject of inquiry in this case.

Plaintiff cannot deny to the State of California its right, for the conservation of its fisheries, to require a permit for the operation of fishing vessels within state waters which are taking fish from the waters of the state. His complaint is that there is no power in the state to legislate, in the manner of Section 1110 of the Fish and Game Code, over fishing vessels within its waters which are not taking fish within the state's territorial boundaries. If this latter power were denied to the state, it would clearly result in the practical deprivation to the state of its undoubted right to regulate the taking of fish from within its territorial waters. Unless all fishing boats within state waters which deliver their catch beyond the state's jurisdiction are brought within the operation of Section 1110 of the Fish and Game Code, it is apparent from the nature of things that there can be no effective control over those boats whose operations within state waters tend to impede the administration and enforcement of the state's fish and game laws and tend to the depletion and waste of its fish supply. Vessels plying beyond the imaginary three mile boundary line which marks the termination of the state's jurisdiction, as plaintiff alleges he is about to do, can easily cross the line to within the state's territorial waters, engage in their fishing operations and remove their take beyond the three mile limit without any real danger of apprehension in the act. The uncontroverted affidavit on file of G. H. Clark, Supervising Fisheries Researcher for the Division of Fish and Game of the State of California, shows that this situation is not a theoretical possibility, but on the contrary, an actuality. The affidavit shows that there are floating sardine reduction plants stationed beyond the state's three mile limit to take delivery of sardines from vessels fishing off the coast of California; that this practice is engaged in to enable these floating reduction plants to operate free from the restrictive measures which are imposed on similar reduction plants within the state for the purpose of preserving the state's sardine supply from threatened exhaustion by reason of excessively heavy sardine fishing for reduction purposes; that the vessels delivering to these floating reduction plants catch the sardines by moonlight and the operators of such vessels cannot themselves know whether they are taking sardines from within or from beyond the three mile limit; that the Division of Fish and Game has determined that large quantities of sardines delivered to floating reduction plants were actually taken within state waters.

The insurmountable difficulties attendant upon policing the waters of the state from the coast to the imaginary three mile limit, wherever fishing operations occur; the impossibility of distinguishing fish taken in state waters from those taken from without, or between vessels fishing within from those fishing beyond the state's limits; the consequent ease with which fraud and deceit might be practiced by vessels delivering fish taken from the fisheries of the state to points outside the state on the pretext of operating solely beyond the three mile limit—these considerations alone justify the provisions of Section 1110 of the Fish and Game Code

as a proper exercise of the police power of the State of California, having reasonable relation to the object of their enactment, and reasonably calculated to render effective the state's power of control over the fish supply within its territorial waters.

In Bayside Fish Flour Co. v. Gentry, supra, the United States Supreme Court upheld the constitutionality of certain portions of the California Fish and Game Code regulating the processing within the state, for interstate commerce, of sardines taken either from the waters of the state or from beyond the state's territorial boundaries. State legislation prohibiting the possession of wild game out of season within its borders was held a valid exercise by the state of its police power for the protection of the state's own game supply, in its application to game imported from without the state. New York ex rel. Silz v. Hesterberg, 211 U.S. 31, 29 S.Ct. 10, 53 L.Ed. 75. In Miller v. McLaughlin, 281 U.S. 261, 50 S.Ct. 296, 297, 74 L.Ed. 840, the United States Supreme Court held valid an act of the state legislature of Nebraska which not only prohibited the taking of fish from the waters of the state with nets, traps or seines, but made the bare possession of such equipment unlawful. The court said: "A State may regulate or prohibit fishing within its waters, Manchester v. Massachusetts, 139 U.S. 240, 11 S.Ct. 559, 35 L. Ed. 159; Lawton v. Steele, 152 U.S. 133, 14 S.Ct. 499, 38 L.Ed. 385; Geer v. Connecticut, 161 U.S. 519, 16 S.Ct. 600, 40 L. Ed. 793, and, for the proper enforcement of such statutes, may prohibit the possession within its borders of the special instruments of violation, regardless of the time of acquisition or the protestations of lawful intentions on the part of a particular possessor, Barbour v. Georgia, 249 U.S. 454, 39 S.Ct. 316, 63 L.Ed. 704; Samuels v. McCurdy, 267 U.S. 188, 45 S.Ct. 264, 69 L.Ed. 568, 37 A.L.R. 1378, compare Lawton v. Steele, supra; [People ex rel.] Silz v. Hesterberg, 211 U.S. 31, 29 S.Ct. 10, 53 L.Ed. 75; Miller v. Schoene, 276 U.S. 272, 48 S.Ct. 246, 72 L.Ed. 568."

We have referred to but a few of the decisions upholding the constitutionality of state legislation calculated to effectuate the exercise by the state of its police power for the general welfare of its inhabitants. In each instance, the legislation was adjudged valid by application of the principle which governs the instant case, namely; that the state's power of control over its fish and wild game includes the right to adopt any measure, not unduly oppressive to private individuals, reasonably necessary to render that control effective.

There is nothing unduly oppressive to private individuals in the requirement of the section under consideration that fishing vessels obtain a permit to operate in state waters when they deliver fish beyond the state's jurisdiction. Nor is there anything unduly oppressive in the section by reason of the fact that under its provisions the granting of a permit will be made only where it will not impede the enforcement and operation of the Fish and Game Code or tend to the depletion or waste of the state's fisheries. For if the issuance of a permit in any particular case would have such effect, its refusal in such instance would be justified in the interests of the general public, to which considerations of individual hardship must always be subservient.

■ Nor is there any lack of procedural due process in the section as contended by plaintiff in his brief on file. A violation of the section calls for the seizure and forfeiture of the vessel, but the forfeiture is not by summary confiscation. It is provided that a proceeding in condemnation be had in the superior court of the county in which the seizure is made, and that there be a hearing on notice before any order of forfeiture is entered. The infliction of the penalty of seizure and forfeiture of the vessel for a violation of the provisions requiring a permit for the operation of such vessel is within the power of the state legislature. In Smith v. Maryland, 59 U.S. 71, 75, 18 How. 71, 15 L.Ed. 269, an act of the legislature of the State of Maryland was held valid which prohibited the taking of oysters with a scoop or drag and providing for a forfeiture of any vessel employed for that purpose. The court in this case said: "It is within the legislative power of the State to interrupt the voyage and inflict the forfeiture of a vessel enrolled and licensed under the laws of the United States, for a disobedience, by those on board, of the commands of such a law. To inflict a forfeiture of a vessel on account of the misconduct of those on board, —treating the thing as liable to forfeiture, because the instrument of the offence is within established principles of legislation, which have been applied by most civilized governments."

Plaintiff's motion for a preliminary injunction will be denied, and defendants' motion to dismiss this action will be granted.