[Civ. No. 12022. First Dist., Div. One. Oct. 19, 1942.]

SANTA CRUZ OIL CORPORATION (a Corporation) et al., Appellants, v. NATE F. MILNOR et al., as Fish and Game Commissioners, etc., Respondents.

Andersen & Resner, George R. Andersen and Herbert Resner for Appellants.

Earl Warren, Attorney General, and Ward Sullivan and Helen Van Gulpen Harris, Deputies Attorney General, for Respondents.

WARD, J.—Appellants—plaintiffs in the court below—brought suit to enjoin defendants, members of the Fish and Game Commission, from enforcing against them the provisions of section 1110 of the Fish and Game Code of this state (Stats. 1939, p. CXXXIX; Initiative Measures approved Nov. 8, 1939), urging among other contentions that said section is violative of the state Constitution in that upon its submission to the voters it lacked the required legislative title. A general demurrer to the complaint was sustained. Plaintiffs electing to stand upon their pleading, declined to amend. Judgment for defendants was thereupon entered, from which the plaintiffs have taken this appeal.

Appellant Mezin is a resident of the State of Oregon; Cardinalli, of California. Both are fisherman-boat-owners operating under contracts to engage in fishing outside the territorial waters of California and deliver their catch, also out of such waters, to the "Lake Miraflores," a floating fish reduction plant operated on the high seas by appellant Santa Cruz Oil Corporation, a California corporation with its principal place of business in this state. The fish so delivered to "Lake Miraflores" are there, more than three miles westerly from an imaginary line on the coast of California, reduced to fishmeal and oil, which is delivered through the port of San Francisco to various parts of the country. All of the vessels so used visit ports of this state in making deliveries, for the purpose of repairs, procuring supplies, etc.

Section 1110 of the Fish and Game Code provides in part: "No person shall use or operate or assist in using or operating in this State or the waters thereof, any boat or vessel used in connection with fishing operations irrespective of its home port or port of registration, which fishing boat or vessel delivers or by which there is delivered to any point or place other than within this State any fish, mollusks or crustaceans which are caught in, or taken aboard said boat or vessel from, the waters of the Pacific Ocean within this State or on the high seas or elsewhere, unless a permit authorizing the same shall have been issued by the Fish and Game Commission." (Deering's Gen. Laws, 1941 Supp., p.843.) Following a provision authorizing the commission, under specified circumstances, to grant permits, the section continues: "Any person who uses or operates or assists in using or operating any boat or vessel in violation of the provisions of this section is guilty of a misdemeanor and such boat or vessel and the net, gear or other equipment of said boat or vessel is a public nuisance and shall be forfeited." (Deering's Gen. Laws, 1941 Supp., p. 843.) The manner of the forfeiture is provided by the code.

Appellants contend that "section 1110 is void for the reason that it was illegally submitted to the voters of California without the required legislative title contrary to the provisions of the California Constitution, article IV, section 24." Section 24 provides that "Every act shall embrace but one subject, which subject shall be expressed in its title. . . ." Section 1 of article IV, as adopted in 1911, provides that all initiative petitions described shall have printed in twelve point black-face type the following: "Initiative measure to be presented to the Legislature," and that initiative or referendum petitions may be presented in sections, but that each section shall contain a full and correct copy of the title and text of the proposed measure, and that "legislation may be enacted to facilitate its operation."

Pursuant to the power granted, the Legislature in 1913 amended Political Code section 1197 and directed: "The attorney general shall provide and return to the secretary of state a ballot title or designation by which all such questions, propositions, proposed laws and constitutional amendments shall be designated upon the ballot; . . . The ballot title may be distinguished from the legislative or other title of the measure. . . . In making such ballot title, the attorney general shall give a true and impartial statement of the pur-

pose of the measure. . . ." In 1915 section 1197a was added making it mandatory upon proponents of any initiative measure to submit a draft thereof to the attorney general so that a title might be prepared. In 1927 in *Wallace* v. *Zinman,* 200 Cal. 585 [254 P. 946, 62 A.L.R. 1341], the court considered the sufficiency of a title to a usury act, and in reference thereto stated (pp. 593, 595) : "We do not recognize an initiative measure as having any greater strength or dignity than attaches to any other legislation. . . . If an amendment of the constitution were intended, the provision requires steps to be taken that will apprise the voters thereof so that they may intelligently judge of the fitness of such measure as a constituent part of the organic law." "It may be said in passing that section 1197a of the Political Code throws no light upon the question before us, as this act could not have been intended to dispense with this requirement as to title. We must, therefore, hold that the statute in question is subject to section 24 of article IV of the constitution, hereinbefore quoted, and that inasmuch as the provision here under consideration is an independent subject not referred to in the title to said act, so much of said act as comprises this provision is void." This case seems to recognize a difference in titles without use of the designation "legislative title" and "ballot title." In 1932 the mandatory provisions of section 1197a were incorporated into section 1 of article IV of the Constitution.

The real question is: Are two titles needed, assuming them to be the same or different? Our attention has not been called to any provision requiring more than one title on the ballot. Unless the legislative title has a tendency to deceive or mislead the legislators (*Wallace* v. *Zinman, supra*)—a matter that might well be disposed of before the matter appears on the ballot—all presumptions after election are in favor of the sufficiency of the original title. There is no claim made on this appeal that there was deception, but rather, that the title simply contained the enacting clause. In 1938 the Supreme Court rendered opinions in the cases of *Epperson* v. *Jordan,* 12 Cal.2d 61 [82 P.2d 445]; *Vandeleur* v. *Jordan,* 12 Cal.2d 71 [82 P.2d 455], and *Brown* v. *Jordan,* 12 Cal.2d 75 [82 P.2d 450]. In the last case, referring to the previous cases, the court said (p. 78) : "In those cases it was held that in passing upon the legal sufficiency of the circulation title prepared by the attorney general all presumptions are in favor of the propriety of his actions, and that if reasonable minds may differ as to whether the title contains a proper 'summary of the chief

purpose and points' of the proposal, the title so prepared must be held to be legally sufficient. Auxiliary and subsidiary matters need not be included in the title." (See, *Hogan* v. *Hall*, 198 Ark. 681 [130 S.W.2d 716]; *Nordquist* v. *Ford*, 112 Mont. 278 [114 P.2d 1071].) It was not necessary that the "legislative title" should appear on the ballot. (*Vandeleur* v. *Jordan, supra.*) There is no contention in this case that a legislative or ballot title entrapped the voters by being misleading or deceiving in character. (*Heron* v. *Riley*, 209 Cal. 507 [289 P. 160].) Section 24 of article IV of the state Constitution "was not enacted to provide means for the overthrow of legitimate legislation." (*Evans* v. *Superior Court*, 215 Cal. 58, 62 [8 P.2d 467].

▮ Appellants next urge that the Legislature has attempted to enact extraterritorial legislation; that the act constitutes an unlawful interference with interstate commerce; that it violates the privileges and immunities, equal protection of the laws and due process clauses of the federal Constitution.

It must be conceded that this statute presents a borderline case. It obviously affects extraterritorial operations over which this state has no jurisdiction. But it operates only on fishing boats that come within the territorial limits of this state. The lawful act of fishing outside the three mile limit obviously affects the natural resources of this state within the three mile limit. California has no power to extend the operation of its laws beyond its maritime frontier, but when the impact of activities outside the three mile limit necessarily adversely affects the public policy of this state, within the three mile limit, the state has the power to take steps against the persons responsible for such activities when they come within the limits of its jurisdiction. This statute does not make punishable acts committed outside the jurisdiction of California. It operates only when boats which fish outside its jurisdiction (but whose acts adversely affect the interests of this state) come within this state's jurisdiction. As was said in *Bayside Fish Flour Co.* v. *Gentry*, 297 U.S. 422, 426 [56 S.Ct. 513, 80 L.Ed. 772], in upholding a somewhat similar statute: ". . . its legal justification rests upon the ground that it operates as a shield against the covert depletion of the local supply, and thus tends to effectuate the policy of the law by rendering evasion of it less easy." (See, also, *Silz* v. *Hesterberg*, 211 U.S. 31 [29 S.Ct. 10, 53 L. Ed. 75].)

The constitutional questions presented on this appeal are identical with those raised and discussed in *Mirkovich* v. *Milnor*, 34 F.Supp. 409, wherein the plaintiff, engaged in a business similar to that of plaintiffs herein, sought to enjoin the same defendants, members of the Fish and Game Commission of the State of California, from enforcing against him the provisions of section 1110 of the Fish and Game Code of the State of California. The plaintiff in each action is represented by the same attorneys. The motion for a preliminary injunction in the Mirkovich case was denied by a federal court of three judges created by statute primarily to pass upon constitutional questions, the matter being "Before HEALY, Circuit Judge and ST. SURE and WELSH, District Judges." The opinion was delivered by Welsh, District Judge. Such a decision is not controlling in this court, but the reasoning and the conclusion therein are persuasive and, as we find in the present case, sound. We therefore take the liberty of adopting as the opinion of this court the following language from the Mirkovich case:

"One of plaintiff's grounds of attack is that the measure in question constitutes an interference with interstate and foreign commerce in attempting to regulate fishing operations beyond its jurisdiction. Section 1110 of the Fish and Game Code does not purport, by its terms, to forbid or control fishing operations beyond the state's jurisdiction. It relates solely to the operation, within state waters, of fishing vessels engaged in delivering their catch outside the state, regardless of where the fishing occurs. It appears from the provisions of the law in question that the object of its enactment was not to affect fishing operations beyond the state's jurisdiction, but rather to protect and conserve the state's fisheries from possible depletion and waste by virtue of uncontrolled taking of fish from the waters of the state to points beyond its jurisdiction.

"While the permit required is one which, in terms, authorizes the delivery of fish outside state limits, its actual effect is upon the operation, within state waters, of fishing vessels delivering their catch beyond the state's jurisdiction, and not upon the delivery itself. The statute cannot be fairly construed, on its face, to be an illegal attempt by the state to extend its legislation beyond the boundaries of its jurisdiction since it clearly appears therefrom that the acts prohibited without, and allowed with, a permit, are acts which are to be performed within the territorial jurisdiction

of the state. So far as section 1110 of the Fish and Game Code is concerned, plaintiff can fish to any extent he wishes beyond the three mile limit without violating any of its provisions which would subject his boat to seizure and forfeiture. That plaintiff might find himself unable to carry on his fishing operations beyond the state's jurisdiction without entering and operating his boat within state waters does not, for that reason, render section 1110 void on its face in making it necessary for him to apply for a permit so to do, if the provisions of that section requiring such permit are sustainable as a proper exercise by the state of its police power in the conservation of its fisheries. Section 1110 does not, by any reasonable implication, purport to regulate foreign commerce in fish, or to control the movement of fishing vessels in such foreign commerce. It does not affect the importation of fish into the state. And to the extent that it affects any exportation of fish taken from the waters of the state, its action is fully justified on the principle that a state is the owner of its fisheries for the benefit of its citizens and can impose any condition on the taking and use, after taking, of fish within its waters, reasonably necessary for the conservation of its fisheries for the beneficial use of its own citizens. (*Geer* v. *State of Connecticut*, 161 U.S. 519 [16 S.Ct. 600, 40 L.Ed. 793].)

"If that portion of section 1110 of the Fish and Game Code attacked by plaintiff is sustainable as a proper exercise by the state of its police power, the contention that its enforcement would indirectly affect interstate commerce and that it constitutes a violation of the guarantees of the 14th Amendment to the United States Constitution cannot be maintained. This principle is too well settled to require a reference to supporting authorities.

"That a state has the power to enact legislation for the conservation of its fisheries is, of course, not open to question. Any law having a reasonable relation to such object and its accomplishment, and which is not unduly oppressive upon individuals must be upheld as a legitimate exercise of the state's police power without inquiry into the possible soundness of legislative judgment in the premises, and without consideration for possible individual hardships. *Lawton* v. *Steele*, 152 U.S. 133, 14 S.Ct. 499, 38 L.Ed. 385; *Bayside Fish Flour Co.* v. *Gentry*, 297, U.S. 422, 56 S.Ct. 513, 80 L.Ed. 772.

"Section 1110 of the Fish and Game Code contemplates

the granting of permits for the operation of fishing boats in state waters which deliver their catch beyond the state's jurisdiction, whenever the issuance of such permit 'will not tend to prevent, impede or obstruct the operation, enforcement or administration' of the Fish and Game Code and will not tend to result in the illegal taking of fish from the waters of the state, or in the depletion or waste of any species of fish. The object of the requirement for a permit to operate a fishing vessel in state waters is, by necessary implication from the specified conditions precedent to its granting, the conservation of the state's fisheries and their protection from possible depletion and waste. Plaintiff does not claim that the real purpose of such requirement is otherwise. While it may be said that the fish and game commission is granted considerable latitude in the matter of granting or withholding permits, it cannot be inferred therefrom that the commission is thereby given arbitrary or discriminatory powers; nor does it afford any basis for plaintiff's contention that the statute is an attempt to regulate fishing wherever it occurs. It is assumed by the terms of section 1110 that the commission will exercise its discretionary power in consonance with the legitimate objects towards which the legislation is apparently aimed. This is a matter relating to the constitutional administration of the law, and not to its validity as it stands, and is not the subject of inquiry in this case.

"Plaintiff cannot deny to the State of California its right, for the conservation of its fisheries, to require a permit for the operation of fishing vessels within state waters which are taking fish from the waters of the state. His complaint is that there is no power in the state to legislate, in the manner of section 1110 of the Fish and Game Code, over fishing vessels within its waters which are not taking fish within the state's territorial boundaries. If this latter power were denied to the state, it would clearly result in the practical deprivation to the state of its undoubted right to regulate the taking of fish from within its territorial waters. Unless all fishing boats within state waters which deliver their catch beyond the state's jurisdiction are brought within the operation of section 1110 of the Fish and Game Code, it is apparent from the nature of things that there can be no effective control over those boats whose operations within state waters tend to impede the administration and enforcement of the state's fish and game laws and tend to the depletion and waste of its fish supply. Vessels plying beyond

the imaginary three mile boundary line which marks the termination of the state's jurisdiction, as plaintiff alleges he is about to do, can easily cross the line to within the state's territorial waters, engage in their fishing operations and remove their take beyond the three mile limit without any real danger of apprehension in the act. . . .

 "The insurmountable difficulties attendant upon policing the waters of the state from the coast to the imaginary three mile limit, wherever fishing operations occur; the impossibility of distinguishing fish taken in state waters from those taken from without, or between vessels fishing within from those fishing beyond the state's limits; the consequent ease with which fraud and deceit might be practiced by vessels delivering fish taken from the fisheries of the state to points outside the state on the pretext of operating solely beyond the three mile limit—these considerations alone justify the provisions of section 1110 of the Fish and Game Code as a proper exercise of the police power of the State of California, having reasonable relation to the object of their enactment, and reasonably calculated to render effective the state's power of control over the fish supply within its territorial waters.

"In *Bayside Fish Flour Co.* v. *Gentry, supra,* the United States Supreme Court upheld the constitutionality of certain portions of the California Fish and Game Code regulating the processing within the state, for interstate commerce, of sardines taken either from the waters of the state or from beyond the state's territorial boundaries. State legislation prohibiting the possession of wild game out of season within its borders was held a valid exercise by the state of its police power for the protection of the state's own game supply, in its application to game imported from without the state. *New York ex rel. Silz* v. *Hesterberg,* 211 U.S. 31, 29 S.Ct. 10, 53 L.Ed. 75. In *Miller* v. *McLaughlin,* 281 U.S. 261, 50 S.Ct. 296, 297, 74 L.Ed. 840, the United States Supreme Court held valid an act of the state legislature of Nebraska which not only prohibited the taking of fish from the waters of the state with nets, traps or seines, but made the bare possession of such equipment unlawful. The court said: 'A State may regulate or prohibit fishing within its waters, *Manchester* v. *Massachusetts,* 139 U.S. 240, 11 S.Ct. 559, 35 L.Ed. 159; *Lawton* v. *Steele,* 152 U.S. 133, 14 S.Ct. 499, 38 L.Ed. 385; *Geer* v. *Connecticut,* 161 U.S. 519, 16 S.Ct. 600, 40 L.Ed. 793, and, for the proper enforcement of such

statutes, may prohibit the possession within its borders of the special instruments of violation, regardless of the time of acquisition or the protestations of lawful intentions on the part of a particular possessor, *Barbour* v. *Georgia,* 249 U.S. 454, 39 S.Ct. 316, 63 L.Ed. 704; *Samuels* v. *McCurdy,* 267 U.S. 188, 45 S.Ct. 264, 69 L.Ed. 568, 37 A.L.R. 1378, compare *Lawton* v. *Steele, supra;* [*People ex rel.*] *Silz* v. *Hesterberg,* 211 U.S. 31, 29 S.Ct. 10, 53 L.Ed. 75; *Miller* v. *Schoene,* 276 U.S. 272, 48 S.Ct. 246, 72 L.Ed. 568.'

''We have referred to but a few of the decisions upholding the constitutionality of state legislation calculated to effectuate the exercise by the state of its police power for the general welfare of its inhabitants. In each instance, the legislation was adjudged valid by application of the principle which governs the instant case, namely; that the state's power of control over its fish and wild game includes the right to adopt any measure, not unduly oppressive to private individuals, reasonably necessary to render that control effective.

''There is nothing unduly oppressive to private individuals in the requirement of the section under consideration that fishing vessels obtain a permit to operate in state waters when they deliver fish beyond the state's jurisdiction. Nor is there anything unduly oppressive in the section by reason of the fact that under its provisions the granting of a permit will be made only where it will not impede the enforcement and operation of the Fish and Game Code or tend to the depletion or waste of the state's fisheries. For if the issuance of a permit in any particular case would have such effect, its refusal in such instance would be justified in the interests of the general public, to which considerations of individual hardship must always be subservient.

''Nor is there any lack of procedural due process in the section as contended by plaintiff in his brief on file. A violation of the section calls for the seizure and forfeiture of the vessel, but the forfeiture is not by summary confiscation. It is provided that a proceeding in condemnation be had in the superior court of the county in which the seizure is made, and that there be a hearing on notice before any order of forfeiture is entered. The infliction of the penalty of seizure and forfeiture of the vessel for a violation of the provisions requiring a permit for the operation of such vessel is within the power of the state legislature. In *Smith* v. *Maryland,* 59 U.S. 71, 75, 18 How. 71, 15 L.Ed. 269, an act of the legislature of the State of Maryland was held valid

which prohibited the taking of oysters with a scoop or drag and providing for a forfeiture of any vessel employed for that purpose. The court in this case said: 'It is within the legislative power of the State to interrupt the voyage and inflict the forfeiture of a vessel enrolled and licensed under the laws of the United States, for a disobedience, by those on board, of the commands of such a law. To inflict a forfeiture of a vessel on account of the misconduct of those on board,—treating the thing as liable to forfeiture, because the instrument of the offense is within established principles of legislation, which have been applied by most civilized governments.' ''

While the authorities cited by appellants herein are not identical with those cited in the Mirkovich case, an examination of the former has not changed our view as to the correctness of the decision of the federal court.

The following citations submitted by respondents or the result of this court's own research, tend to uphold the views expressed in the Mirkovich case: *Johnson* v. *Gentry,* 220 Cal. 231 [30 P.2d 400]; *Quong Ham Wah Co.* v. *Industrial Acc. Com.,* 184 Cal. 26 [192 P.1021, 12 A.L.R. 1190]; *In re Makings,* 200 Cal. 474 [253 P.918]; *Moore* v. *Purse Seine Net,* 18 Cal.2d 835 [118 P.2d 1]; *Pacific Coast Dairy* v. *Dept. of Agriculture,* 19 Cal.2d 818 [123 P.2d 442]; *New Jersey* v. *New York City,* 283 U.S. 473 [51 S.Ct. 519, 75 L.Ed. 1176]; *Whitney* v. *California,* 274 U.S. 357 [47 S.Ct. 641, 71 L.Ed. 1095]; 92 A.L.R. 1267; *Osborn* v. *Ozlin,* 310 U.S. 53 [60 S.Ct. 758, 84 L.Ed. 1074]; *Alaska Packers Assn.* v. *Industrial Acc. Comm'n,* 294 U.S. 532 [55 S.Ct. 518, 79 L.Ed. 1044].

The order sustaining the demurrer being non-appealable, the purported appeal therefrom is dismissed; the judgment is affirmed.

Peters, P. J., and Wagler, J. pro tem., concurred.