Appellate Department, Superior Court, San Diego

[Crim. A. No. 169752.   Apr. 4, 1952.]

THE PEOPLE, Respondent, v. FRED HARDING MILLER, Appellant.

Fred Harding Miller, in pro. per., and Randolph Karr for Appellant.

James Don Keller, District Attorney, and William B. Enright, Deputy District Attorney, for Respondent.

Huntington P. Bledsoe, as Amicus Curiae on behalf of Respondent.

BURCH, J.—This appeal raises the question of the right of a California citizen to bring into the state, without complying with section 460 of the Fish and Game Code, three kelp bass legally taken outside of the State of California, and the construction of the applicable provisions of that code.

It appears that defendant joined a fishing excursion in Mexican waters on the sport fishing boat "Fisherette." The captain of the "Fisherette" procured for defendant a Mexican license and, in compliance with other pertinent provisions of the Fish and Game Code covering vessels used to transport fishermen to fishing areas (§ 432.5), made a report to the

Fish and Game Commission upon its forms of the three kelp bass caught by the defendant. When the "Fisherette" docked at San Diego, a game warden, in the course of his duty as an agent of the Fish and Game Commission, was present at the dock. He asked the defendant to exhibit either a license or permit to land fish, as required by sections 428 and 460 of the Fish and Game Code, if he intended to land his fish in California. This the defendant refused to do and continued in refusing after the warden informed the defendant that defendant need only sign the forms there available stating his catch. Defendant was tried by a jury, convicted of violating the provisions of the Fish and Game Code, and has appealed.

The several pertinent sections of the Fish and Game Code which seem to bear upon the case are as follows:

Section 1410 provides that the commission of any act declared by the code to be "unlawful," or the violation of any provision of the code or of any rule or regulation made thereunder, unless otherwise provided therein, is a misdemeanor.

Section 452 reads in part as follows:

"It is unlawful to possess . . . fish . . . taken in violation of any of the provisions of this code, or of any rule, regulation, or condition made thereunder."

Section 460, so far as material, reads:

". . . fish . . . legally taken outside of this State, may be brought into this State under a written permit issued by the commission.

"The commission may also allow the bringing in of such . . . fish . . . without such written permit if a record is made at the time of entry with the nearest justice of the peace or notary public, or with any State or Federal agency designated by the commission.

"Such record shall be in a form prescribed by the commission. One copy of the record shall be carried by the person bringing in such . . . fish, . . . while the same are in his possession; one copy left on file with the person or agency before whom such record is made, and one copy sent to the commission."

It appears that no closed season has been established for kelp bass, nor is there any restriction or regulation as to use, sale or disposal of such fish. Defendant was not licensed as required by section 428 to catch fish for purposes other than profit. Defendant is a citizen and resident of California.

■ Defendant urges that the pertinent code sections do not state a crime. In this we think he is mistaken. Briefly stated, section 460 makes a permit from the commission a condition on the right to bring into the state fish lawfully caught outside the state. Section 452 makes the violation of a condition unlawful. Section 1410 makes that which is declared to be unlawful by section 452 a crime. It cannot be held that the words of the sections fix no ascertainable standard; that the requirement of a permit is in terms so vague that men of common intelligence must necessarily guess at its meaning or differ as to its application. (*Bayside Fish Flour Co.* v. *Gentry,* 297 U.S. 422, 446 [56 S.Ct. 513, 80 L.Ed. 772.)

Our attention has been drawn to two other sections of the Fish and Game Code. Section 453 provides in part as follows:

"Unless otherwise provided, it is unlawful to possess . . . fish. . . except during the open season and if legally taken or brought into the State during the open season and for 10 days thereafter, and not more than one daily bag limit thereof may be possessed during said period after the close of the open season."

Section 454 provides in part as follows:

"Unless otherwise provided, the provisions of this code relating to the possession of . . . fish, . . . apply to . . . fish, . . . taken either in or outside of this State."

Since these sections deal only with the unlawful possession of fish, and in no manner with the unlawful importation of fish from foreign waters, we consider they are not applicable to the circumstances of the present case.

■ Defendant further urges, as he did in the court below, the insufficiency of the complaint. The complaint charged:

". . . that the crime of Failure to Obtain Written Permit (F&G 460) has been committed by said defendant as follows: That said Fred Harding Miller on or about the 9th day of June 1951, in San Diego Township, in the said County of San Diego, State of California, and before the making or filing of this Complaint, did then and there wilfully and unlawfully fail, neglect or refuse to make a record or a written permit as required by the Fish and Game Code 460 of the State of California, of fish legally taken outside of the State of California and brought into the State of California;"

In view of the construction we have placed upon the sections, we hold the complaint sufficient. The complaint charges that upon a certain date within the jurisdiction the defendant

violated the express condition of the statute with regard to bringing fish, legally taken outside the State of California, into the State of California. Such a complaint adequately stated the charge which the defendant was called to defend. (See *People* v. *Pierce,* 14 Cal.2d 639, 644 [96 P.2d 784]; *People* v. *Myers,* 1 Cal.App.2d 620 [37 P.2d 191].)

Neither do we think the provisions assailed are vague or uncertain, nor the resort to a permit to be issued by the commission under the defined specifications of the statute an inadequate or improper means of effecting the legislative will. (*People* v. *Stafford Packing Co.,* 193 Cal. 719 [227 P. 485]; *People* v. *Monterey Fish Products Co.*. 195 Cal. 548 [234 P. 398, 38 A.L.R. 1186]; *Bayside Fish Flour Co.* v. *Gentry,* 297 U.S. 422, 446 [56 S.Ct. 513, 80 L.Ed. 772].)

Defendant contends further that section 460 is violative of the due process and equal protection clause of the Fourteenth Amendment of the federal Constitution. We think, however, that if the section may be interpreted as but remotely and indirectly affecting commerce, the mere fact that it dealt with the use or treatment of fish brought into the state from the outside would not invalidate it. The section would be legally justified upon the ground that it tends to effectuate the policy of the law by rendering the evasion of it less easy. (See *Ex parte Maier,* 103 Cal. 476 [37 P. 402, 42 Am.St.Rep. 129]; *Sherlock* v. *Alling,* 93 U.S. 99 [23 L.Ed. 819]; *Plumley* v. *Massachusetts,* 155 U.S. 461 [15 S.Ct. 154, 39 L.Ed. 223]; *Silz* v. *Hesterberg,* 211 U.S. 31 [29 S.Ct. 10, 53 L.Ed. 75]; *Bayside Fish Flour Co.* v. *Gentry,* 297 U.S. 422 [56 S.Ct. 513, 80 L.Ed. 772].) If not otherwise objectionable, the Legislature of the state is authorized to pass measures for the protection of the people of the state in the exercise of the police power. The Legislature itself is the judge of the necessity or expediency of the means adopted. (See *Chicago, B. & Q. R. R. Co.* v. *McGuire,* 219 U.S. 549, 569 [31 S.Ct. 259, 55 L.Ed. 328].)

There has been some discussion in the briefs of an attempt to exercise extraterritorial jurisdiction and imperium and dominion of the three mile belt adjacent to the shore. We think the contention immaterial to the issues, but if it were material the decision in *Toomer* v. *Witsell,* 334 U.S. 385, 393 [68 S.Ct. 1157, 92 L.Ed. 1460], would be a sufficient answer. (See, also, *Commonwealth* v. *McHugh,* 326 Mass. 249, 271, 272 [93 N.E.2d 751].)

■ In our view, the essential question for judicial determination in this case is whether the regulation imposed on foreign commerce, explicit in the section, so far impinges upon the supreme and paramount power of Congress as to be invalid under the commerce clause, or whether there is manifest a state interest of such importance as to outweigh whatever national interest there may be in freedom from such regulation. (*Cooley* v. *Board of Wardens* (1851), 12 How. 299 [13 L.Ed. 996]; *Cities Service Gas Co.* v. *Peerless Oil & Gas Co.* (1951), 340 U.S. 179 [71 S.Ct. 215, 95 L.Ed. 190].)

In the last cited case it is said that the state law "must not discriminate or place an embargo on" commerce. There is no embargo here, for in order to have a permit to transport his fish into the State, defendant was only required to record his catch. If he complied with the requirement he might import the fish, for in such case he would be entitled to the permit. (*Bayside Fish Flour Co.* v. *Gentry, supra.*)

In determining the impact of the section upon commerce, it must be interpreted as it was above for other purposes, viz., that the code makes it unlawful to import fish into California which were legally caught outside the state waters. So interpreted, defendant contends he was forbidden by the section from doing what only Congress could forbid or allow. In this respect, unquestionably the statute is in contrast with other sections of the code which have been upheld. Section 1110 requires a permit for a fishing vessel operating in state waters in connection with fishing, regardless of home port, and regardless of where the fish were caught or taken aboard, whether from ". . . the waters of the Pacific Ocean within this State or on the high seas or elsewhere, . . ." It was held valid over constitutional objections in *Santa Cruz Oil Corp.* v. *Milnor,* 55 Cal.App.2d 56 [130 P.2d 256], and in *Mirkovich* v. *Milnor,* 34 F.Supp. 409. The holding was cited and approved as to both cases in *Takahashi* v. *Fish & Game Com.,* 30 Cal.2d 719 [185 P.2d 805]. (Reversed on other grounds in *Takahashi* v. *Fish & Game Com.,* 334 U.S. 410 [68 S.Ct. 1138, 92 L.Ed. 1478].) We quote from the Mirkovich case, *supra*:

"That a state has the power to enact legislation for the conservation of its fisheries is, of course, not open to question. Any law having a reasonable relation to such object and its accomplishment, and which is not unduly oppressive upon individuals must be upheld as a legitimate exercise of the state's police power without inquiry into the possible sound-

ness of legislative judgment in the premises, and without consideration for possible individual hardships. *Lawton* v. *Steele*, 152 U.S. 133, 14 S.Ct. 499, 38 L.Ed. 385; *Bayside Fish Flour Co.* v. *Gentry*, 297 U.S. 422, 56 S.Ct. 513, 80 L.Ed. 772. . . .

"The insurmountable difficulties attendant upon policing the waters of the state from the coast to the imaginary three mile limit, wherever fishing operations occur; the impossibility of distinguishing fish taken in state waters from those taken from without, or between vessels fishing within from those fishing beyond the state's limits; the consequent ease with which fraud and deceit might be practiced by vessels delivering fish taken from the fisheries of the state to points outside the state on the pretext of operating solely beyond the three mile limit—these considerations alone justify the provisions of Section 1110 of the Fish and Game Code as a proper exercise of the police power of the State of California, having reasonable relation to the object of their enactment, and reasonably calculated to render effective the state's power of control over the fish supply within its territorial waters."

In some respects, section 460 in its legal import is analogous to section 1110. In other respects it is not. Both sections are directed to assist the state policy of conserving an important food supply for a growing population. No one would question that fish and game, along with other great natural resources, should be preserved in the public interest. To this end, anglers are licensed to fish, and in proper cases a closed season is established for the various species from time to time in the legislative discretion. Upon other species, the open season may prevail according to what may be deemed necessary and desirable. Those considerations which have controlled judicial decision in cases cited in this opinion seem to apply to section 460 as corollary to the licensing statute (section 428) as they do to other state regulations therein adjudicated as valid. Codifying the fish and game law into separate sections still leaves the court free to find the reasonable relation which the section bears to the broad policy explicit in the law dealing with the conservation of the state's fish and game.

The judgment is affirmed.

Turrentine, P. J., concurred.

Glen, J., deeming himself disqualified, did not participate herein.