[S. F. No. 16102. In Bank.—August 31, 1938.]

RUTH BROWN, Petitioner, v. FRANK C. JORDAN, Secretary of State, etc., Respondent.

[S. F. No. 16096. In Bank.—August 31, 1938.]

TESS MARIE SALINE, Petitioner, v. FRANK C. JORDAN, Secretary of State, etc., Respondent.

O'Melveny, Tuller & Myers, Walter K. Tuller, Louis W. Myers, Jackson W. Chance for Petitioner in S. F. No. 16102.

Jay J. Stein for Petitioner in S. F. No. 16096.

John J. Hamlyn, I. H. Pfaffenberger, Joseph E. Cutten and Lester Stern, as *Amici Curiae,* on Behalf of Petitioners.

U. S. Webb, Attorney-General, and Robert W. Harrison, Chief Deputy Attorney-General, for Respondent.

Carl S. Kegley, John W. Preston, J. Lamar Butler, John Dockweiler, Wm. J. Clark, Culbert L. Olson, Charles E. McGinnis, Sheridan Downey, Allen Miller, Philip C. Boardman,

Joseph W. Boardman, Lawrence W. Allen, Joseph C. Sharp, Lorenzo Turco, A. D. Orme, Samuel S. Klein, W. C. Dorris and Thomas T. Califro, as *Amici Curiae*, on Behalf of Respondent.

THE COURT.—Petitioners, qualified electors and taxpayers of the state, by separate applications, seek writs of mandate directed to the Secretary of State commanding him (1) to refrain from submitting a certain purported initiative measure to the electors of the state, and (2) not to certify the measure to the registrars of voters and county clerks of the state. After the issuance of the alternative writs, the respondent, by way of answer and return, filed general demurrers to the petitions. Proponents of the proposal and certain *amici curiae*, pursuant to permission by the court, have intervened in the proceeding, and have filed briefs herein. Inasmuch as the two petitions involve substantially the same contentions, both will be disposed of in this one opinion.

The measure which petitioners seek to keep from being submitted to the voters at the next general election is a constitutional amendment proposed under the initiative provisions of the state Constitution. The initiative petition has been signed by the requisite number of qualified electors of the state and has been filed with the Secretary of State within the time entitling it to be submitted at the November election.

Petitioners both contend that the proposal should be kept from the ballot because the circulation title appearing upon each page of the initiative petition whereon signatures appear, does not contain a proper "summary of the chief purpose and points" of the proposed constitutional amendment as required by the provisions of article IV, section 1, of the Constitution and section 1197b of the Political Code. In S. F. No. 16102 petitioner Brown, in addition, urges that the proposed amendment, if adopted, would be clearly, obviously and palpably, violative of various provisions of the federal Constitution; that to permit it to be voted upon would constitute a waste of public funds; that for that reason the proposal should be kept from the ballot. ■ In S. F. No. 16096 petitioner Saline urges, as an additional ground for keeping the measure from the ballot, that the proposed initiative petition is contrary to law in that it includes therein a number of proposed constitutional amend-

ments and that under the initiative provisions of the Constitution this cannot be done. In this connection this petitioner asks that this court reconsider its decision in *Wright* v. *Jordan*, 192 Cal. 704 [221 Pac. 915]. This last contention is without merit. Substantially the same contention was made by petitioners in *Epperson* v. *Jordan*, S. F. No. 16101, *ante*, p. 61, and *Kornmann* v. *Jordan*, S. F. No. 16098, *ante*, p. 61 [82 Pac. (2d) 445].) In that case it was held that this contention was unsound, and the decision of *Wright* v. *Jordan, supra,* was reaffirmed.

There is no necessity of reviewing the provisions of the Constitution and of the Political Code requiring the proponents of an initiative measure to secure from the attorney-general a circulation title to their measure before soliciting signatures. In the Epperson and Kornmann cases, *supra,* and to some extent in *Vandeleur* v. *Jordan*, S. F. No. 16112, *ante*, p. 71 [82 Pac. (2d) 455], these provisions were quoted and discussed at length. In those cases it was held that in passing upon the legal sufficiency of the circulation title prepared by the attorney-general all presumptions are in favor of the propriety of his actions, and that if reasonable minds may differ as to whether the title contains a proper "summary of the chief purpose and points" of the proposal, the title so prepared must he held to be legally sufficient. Auxiliary and subsidiary matters need not be included in the title. It is this test which must be applied to the title here challenged.

The proposal here involved is quite long. Its provisions cover four legal-size pages, single spaced. It is proposed to add a new article to the Constitution to be numbered article XXXII. This article is divided into 45 sections. The following is a very brief summary of each section. Section 1 provides that this article shall be known as "The California State Retirement Life Payments Act—$30.00 a week for life". Section 2 states the views of the proponents of the measure as to the purposes of the proposal. Section 3 creates the office of state retirement life payments administrator, and section 4 requires the governor within five days after the adoption of the amendment to appoint one of three named persons to this office who shall serve until 1940, and also provides for what shall happen, if the governor shall fail

to act or if one of the three be not available. Section 5 provides that after 1940 the administrator shall be elected for a four-year term. Section 6 confers upon the administrator broad powers to supervise and administer the provisions of the article. Section 7 requires the administrator to print and issue serially numbered warrants to be known as "Retirement Compensation Warrants of the State of California", and to print and issue serially numbered revenue stamps to be known as "Warrant Redemption Stamps". The section also provides that the warrants shall be non-interest bearing, self-liquidating, negotiable and transferable without endorsement; that they shall be in the denomination of $1 each, and the number of such warrants shall be limited to the requirements of the article. The stamps shall be in the denomination of two cents each and shall be issued in sufficient quantities to provide for the warrant redemption provisions of the article. The warrants shall have suitable spaces on the backs thereof for the affixing of 52 of the redemption stamps, and shall designate serially where each stamp shall be placed weekly starting the first Thursday after the issuance of the warrant. The section also provides what the face of the warrant must disclose, and confers upon the administrator certain powers in the issuance of such warrants. Section 8 provides that starting 12 weeks after the adoption of this article and for 6 weeks thereafter the administrator shall cause to be issued and paid to each person entitled 15 one-dollar warrants each week, 20 such warrants for the next 6 weeks, and 25 warrants for the next 6 weeks; that starting the 31st week after the adoption of this article not less than 30 such warrants or their equivalent in lawful money shall be paid to each person entitled. This section also provides for the increase in number of such warrants to be paid to each recipient in the event of the increase in price of consumer goods over the average 1937 price. It is also provided that after a designated period the administrator may issue a limited number of such warrants in denominations of $5 and $10 each. Section 9 sets forth the qualifications of those entitled to the warrants—every qualified elector of California 50 years of age or over who is not an employer or employee. Such person must have been a legal resident of California for one year immediately preceding the adoption of this article, or if he becomes a resident there-

after, 5 years residence is required. Section 10 permits each recipient of life payments to give notice of his desire that such payments shall cease. Section 11 provides that each recipient of life payments shall receive them for life provided he retains his qualifications. Section 12 provides that each qualified recipient shall be assigned to a bank or agency in his locality, and the administrator shall issue to him a letter of credit, payment record and identification, drawn on that bank or agency entitling him to his weekly payments. Each such letter of credit shall be valid for 52 weeks, at which time the recipient shall receive a new one. The form of such letter of credit is set forth. Section 13 provides that warrants properly stamped shall be accepted in payment of all debts (specifying some of them) due the state, county, city or political subdivision. Section 14 provides that in the event disbursement officers have sufficient warrants on hand, all wages due state, city, county or other political subdivision employees shall be paid up to 50 per cent in such warrants. Certain limitations on this section are provided. Section 15 requires all state, city, county or political subdivision purchasing agents to insert in contracts of purchase a provision that 50 per cent of the purchase price shall be paid in warrants. Section 16 permits governmental agencies receiving warrants under section 13 to deposit the same with the administrator while section 17 permits new warrants to be issued for soiled or unserviceable ones. Section 18 requires the administrator to redeem warrants properly stamped with 52 stamps, in lawful money of the United States. Section 19 exempts from the sales tax all purchases made with warrants, and from the income tax that portion of income received in warrants. Section 20 requires the administrator to appoint banks as payment agencies, but if they refuse such appointment, then merchants shall be so appointed, and if they refuse then independent offices shall be opened by the administrator as such agencies. Section 21 requires the administrator to deposit with such agencies sufficient warrants so that they can pay to the persons assigned to that agency their warrants each week, and section 22 requires the administrator to deposit with the agencies for sale the required number of stamps. Such stamps shall be sold by such agencies only for lawful money of the United States. Section 23 requires every agency other than a bank to furnish

a bond to be paid for by the administrator. Section 24 provides for the compensation of each agent for paying out the warrants and selling the stamps, while section 25 permits banks that receive warrants for deposit to charge a 2-cent per warrant service charge. Section 26 provides for the salary, oath, and a bond of the administrator, while section 27 requires him to appoint four assistant administrators and provides for their salary. Section 28 provides for the employment of various employees by the administrator, for their salaries and the adjustment thereof and for their oath of office. Section 29 provides that the attorney-general shall be the attorney for the administrator. Section 30 provides that until sufficient money is available from the sale of stamps, all operating, administrative and advertising costs, and costs of printing shall be paid from the general fund as requested by the administrator up to $700,000. All sums thus advanced shall be repaid to the state treasury out of excess proceeds resulting from the sale of stamps. Section 31 provides for proceeds from stamp sales to be deposited in California banks. Section 32 places certain restrictions on the number of warrants that shall be issued, and for the repayment of advances made by the state treasurer. Any excess money received from the sale of stamps shall be apportioned to retired beneficiaries as part of their weekly compensation. Section 33 requires the administrator immediately upon the adoption of the article to expend $200,000 for advertising to inform and acquaint the public of the purposes and workings of the plan, to create public confidence in the use of the warrants and "to stimulate their general acceptance and to urge widespread use of warrants in all fields of employment and business endeavor". Section 34 provides for what shall be done with redeemed or reissued warrants. Section 35 provides that retirement life payments shall not be alienated and shall be exempt from attachment or execution, nor shall any person receiving life payments be required to use any portion thereof for the support or maintenance of any person over 18 for whom he might otherwise be legally responsible. Section 36 provides that any person receiving life payments must waive any right to receive payments under the old age security law, but he may elect which payments he desires to receive. Section 37 authorizes the administrator to propose amendments to this article to be voted on at either special elections

called by the administrator or at the general election. Section 38 provides that "no injunction or writ of mandate or other legal or equitable process" shall ever issue to interfere with the administration of this article or to enjoin or prevent any provision of this article from going into effect. Section 39 provides that the office of administrator shall be nonpartisan and he shall be elected as are other nonpartisan officers, while section 40 provides for what shall happen in the event of the death or retirement of an administrator. Section 41 provides that the warrants, stamps or other printing, at the election of the administrator, shall be printed by the state printer or by private enterprise. Section 42 provides that any person who shall knowingly use, prepare, circulate or distribute, with intent to defraud, any spurious, counterfeit, or altered warrant or stamp is guilty of forgery. Section 43 contains a provision repealing all provisions of the Constitution in conflict with this article, with an additional provision as to what shall happen if any other measure is adopted at the same election in conflict with the provisions of this article. Section 44 defines certain designated terms, while section 45 contains a severability provision.

█ It is obvious from the above brief summary of the provisions of this proposal that its chief purpose is the issuance to each qualified person, over 50 years of age and not an employer or employee, of thirty one-dollar warrants each week, such warrants being annually redeemed in cash obtained from the sale of redemption stamps, which stamps are to be affixed to such warrants each week. It is also quite clear that in addition to this "chief purpose" of the provision there are various "chief points" aiming towards the accomplishment of the chief purpose. One such point is the provision for the appointment and subsequent election of the administrator; another is the provision to the effect that the warrants are receivable in payment of state ·or local governmental obligations, and its counter provision, that certain governmental obligations are to be paid in such warrants.

█ Keeping this main purpose and these main points in mind it is clear that all of them are included within the circulation title prepared by the attorney-general. That title reads as follows:

"RETIREMENT LIFE PAYMENTS. Initiative Constitutional Amendment. Provides for State Retirement Life

Payments Administrator, appointed by Governor from three named persons, appointee serving until successor elected in 1940 for four years. Requires State issue retirement compensation warrants, and redemption stamps to be affixed thereon weekly to redeem warrants annually. Requires weekly issuance of at least thirty $1.00 warrants during his life to each qualified California elector fifty years of age not employer nor employed, redeemable in cash by Administrator and receivable in payment of taxes and certain other obligations due to or from State or political subdivisions.''

Petitioners attack this title on many grounds. It is urged that the title is deceptive and tended to mislead the signers, and is legally insufficient in that: taxes are imposed and the title is silent with reference thereto; that the measure appropriates $700,000 out of the general funds of the state which is not disclosed; that the title makes no reference to the power of the administrator to propose amendments and call special elections; that various provisions of the Constitution are repealed by the proposal and that the title is silent as to this fact; that the act provides for cash payments instead of warrant payments under certain conditions, and this the title does not disclose; that the proposal repeals in part the Income and Sales Taxes and the Old Age Security Law and this is not disclosed in the title; that the title does not disclose that public officers and employees must accept one-half of their compensation in warrants; that the title is silent concerning the provision that all public bodies must insert in their contracts of purchase a provision that one-half the price shall be paid in warrants; that the proposal places certain limits on the power of the courts to interfere with the act and this the title does not disclose; that the title makes no reference to the large system of agencies provided for; that the title makes no reference to the provision exempting payments under the act from the claims of creditors; that the title does not disclose clearly that $1.04 must be paid for each $1 warrant or that the stamps must be purchased with cash; that the title does not disclose the $200,000 to be expended by the administrator for advertising.

It is not necessary to consider each of the above objections *seriatim* in order to demonstrate that the failure to mention them in the title does not affect the legal sufficiency of the title. Clearly the ''chief purpose and points'' of the proposal

are disclosed by the title. It is true that the proposal contains many provisions of far-reaching importance—many of them listed in the objections of petitioners. Considered separately, many of the provisions of the proposal not disclosed in the title would be of gravest importance. But when those provisions are read in connection with the other provisions of the act it is apparent that those provisions to which reference is not made in the title are subsidiary and auxiliary to the chief purpose and points already enumerated. The proposal is not being made to accomplish those things which were omitted from the title—they all follow along subsidiary to those things disclosed in the title.

If it be conceded that after disclosing the chief purpose and points of the proposal, the title contains references to some provisions of the proposal no more important than some to which reference was omitted, this does not render the title fatally defective. The title need not contain a summary or index of all of the measure's provisions. Within certain limits what is and what is not an important provision is a question of opinion. Within those limits the opinion of the attorney-general should be accepted by this court.

We have carefully read and considered each of the objections raised by petitioners to the sufficiency of the title and while several of them embody some very important matters, we think all of them are subsidiary and auxiliary to the chief purpose and points of the proposal as disclosed in the title.

As already indicated, petitioner Brown advances the further contention that the measure if passed would be violative of the federal Constitution, particularly article I, section 10 thereof, providing that "No state shall . . . emit bills of credit; make anything but gold and silver coin a tender in payment of debts." It is urged that for this reason it now should be declared invalid and excluded from the ballot. Assuming that this court has power under some circumstances to prevent submission of an initiative measure to the electorate on the ground that if passed it would be void for unconstitutionality, we are convinced that under all of the circumstances here presented this is not a case for the exercise of such power. For that reason, we refrain from passing on the question of the constitutionality of the proposed measure.

For the foregoing reasons the alternative writ heretofore issued is discharged, and the peremptory writ is denied.