[Civ. No. 50497. First Dist., Div. One. Dec. 23, 1983.]

MARGARET TINSLEY et al., Petitioners, v.
THE SUPERIOR COURT OF SAN MATEO COUNTY, Respondent;
MENLO PARK ELEMENTARY SCHOOL DISTRICT et al.,
Real Parties in Interest.

[Civ. No. 50997. First Dist., Div. One. Dec. 23, 1983.]

MARGARET TINSLEY et al., Plaintiffs and Appellants, v.
PALO ALTO UNIFIED SCHOOL DISTRICT et al.,
Defendants and Respondents.

COUNSEL

Gerald Z. Marer, Alan G. Marer, Keogh, Marer & Flicker, Keogh, Marer & Sid, Sidney L. Berlin, Berlin & Goodman, Joseph Cotchett and Cotchett, Dyer & Illston for Petitioners and Plaintiffs and Appellants.

Jack Robertson, Fred Okrand, Mark D. Rosenbaum, Mary Ellen Gale, Antonio Rodriguez, Joseph Duff, Margaret Crosby, Alan Schlosser and Amitai Schwartz as Amici Curiae on behalf of Petitioners and Plaintiffs and Appellants.

No appearance for Respondent.

G. Kip Edwards, Michael D. Torpey, Orrick, Herrington & Sutcliffe, Margaret E. O'Donnell, Breon, Galgani & Godino, Breon, Galgani, Godino & O'Donnell, Sanford Jay Rosen, Barbara Y. Phillips, Edmundo Vasquez Padilla, Mitchell Zimmerman, Kathleen J. Purcell, Rosen & Remcho, LaDoris Hazzard Cordell, Keith V. Breon, Keith C. Sorenson and James P. Fox, District Attorneys, George F. Camerlengo and Thomas F. Casey III, Deputy District Attorneys, for Real Parties in Interest and for Defendants and Respondents.

## OPINION

**NEWSOM, J.**—We consider in this appeal the constitutionality and effect of article I, section 7 of the California Constitution, amended by passage of Proposition 1 by the electorate on November 6, 1979.[1]

Appellants are guardian ad litem parents and their children, the latter of whom either attend or are eligible to attend schools operated by the respondent school districts. They filed a petition for writ of mandate (Code Civ. Proc., § 1085) on October 5, 1978, alleging interdistrict segregation of respondents' schools and seeking an order compelling respondents to submit a reasonably feasible plan to alleviate racial segregation in schools within the named school districts.

After a third amendment to the petition, respondents' demurrer to the petition was sustained without leave to amend and an appeal from that order taken to this court. On April 13, 1979, we decided, in *Tinsley* v. *Palo Alto Unified School Dist.* (1979) 91 Cal.App.3d 871 [154 Cal.Rptr. 591], that appellants' third amended petition did state a cause of action under the equal protection clause of the California Constitution (art. I, § 7) for interdistrict relief from de facto school segregation, and the case was remanded.

---

[1]California Constitution, article I, section 7, reads in pertinent part: "(a) A person may not be deprived of life, liberty, or property without due process of law or denied equal protection of the laws; provided, that nothing contained herein or elsewhere in this Constitution imposes upon the State of California or any public entity, board, or official any obligations or responsibilities which exceed those imposed by the Equal Protection Clause of the 14th Amendment of the United States Constitution with respect to the use of pupil school assignment or pupil transportation. In enforcing this subdivision or any other provision of this Constitution, no court of this state may impose upon the State of California or any public entity, board, or official any obligation or responsibility with respect to the use of pupil school assignment or pupil transportation: (1) except to remedy a specific violation by such party that would also constitute a violation of the Equal Protection Clause of the 14th Amendment to the United States Constitution, and (2) unless a federal court would be permitted under federal decisional law to impose that obligation or responsibility upon such party to remedy the specific violation of the Equal Protection Clause of the 14th Amendment of the United States Constitution. . . . [¶] Nothing herein shall prohibit the governing board of a school district from voluntarily continuing or commencing a school integration plan after the effective date of this subdivision as amended."

The text of Proposition 1, also provides that "any interested person" may request judicial review of a previous court decision that is not in conformance with the California Constitution as amended. This type of modification proceeding would be based on facts which exist at the time of the proceeding and would be given priority over any other civil matter. The amendment also enumerates the "compelling public interests" which the proposition purportedly serves: making the most effective use of limited financial resources available for public education; maximizing educational opportunities; protecting the health and safety of public school pupils; enhancing the ability of parents to participate in the educational process; preserving harmony and tranquility in the educational process; and protecting the environment and preventing waste of fuel resources.

Thereafter, on July 13, 1979, a fourth amended petition was filed, which in pertinent part alleges the following:

The student population of respondent Ravenswood City School District elementary schools is predominantly minority, while the student populations in the elementary schools of the other respondent school districts are predominantly white. Because of the interdistrict racial imbalance in student enrollment, minority students are realistically isolated, and so a segregated school system exists.

In the "mid-peninsula community"—which includes the area contained within the borders of the named respondent school districts—the schools in the Ravenswood City School District, known as the "black schools," are considered as inferior schools. The State Department of Education test scores for students in the Ravenswood City School District are "markedly lower than those of other schools in the mid-peninsula area. . . ."[2] Although respondents "have had actual knowledge of the existence of . . . racially segregated schools" and poor test scores within the "black schools," they have failed and refused to take "reasonably feasible steps" to alleviate or eliminate segregation in the schools.

The petition specifically excludes any allegations of "de jure" or "de facto" or any acts of any respondents which may have contributed, significantly or insignificantly, to the present situation of racially segregated schools in the respondent school districts.

Following the passage of the initiative, respondents either demurred to the petition on the ground that Proposition 1 barred any judicial remedy in the nature of pupil assignment or pupil transportation for the unintentional, "de facto" segregation alleged in the pleading, or answered and asserted Proposition 1 as an affirmative defense. Appellants thereafter moved to strike the demurrers and the Proposition 1 affirmative defense from all answers, and for partial summary judgment on the pleadings concerning Proposition 1, and for a declaration that Proposition 1 was unconstitutional as violative of the 14th Amendment.

 Proposition 1 significantly altered California equal protection law as it applied to school desegregation; that law had formerly, under authority of the state equal protection clause, widely differed from federal constitutional law. (*Crawford* v. *Los Angeles Board of Education* (1980) 113 Cal.App.3d 633, 638 [170 Cal.Rptr. 495] (*Crawford II*), affd. 458 U.S. 527 [73 L.Ed.2d 948, 102 S.Ct. 3211].)

---

[2] They were, in fact, and continue to be, abysmal.

Federal law requires a showing of de jure segregation in all equal protection cases; that is, a "racially discriminatory" purpose (*Washington* v. *Davis* (1976) 426 U.S. 229, 240 [48 L.Ed.2d 597, 607-608, 96 S.Ct. 2040]) or a "current condition of segregation resulting from intentional state action." (*Keyes* v. *School Dist. No. 1* (1973) 413 U.S. 189, 205 [37 L.Ed.2d 548, 561-562, 93 S.Ct. 2686]; *N. A. A. C. P.* v. *Lansing Bd. of Ed.* (6th Cir. 1977) 559 F.2d 1042, 1044.) A party seeking to establish an equal protection violation in the federal courts must show that the state or school authorities "intended to, and did in fact, discriminate against minority pupils, teachers or staff." (*Dayton Board of Education* v. *Brinkman* (1977) 433 U.S. 406, 420 [53 L.Ed.2d 851, 863, 97 S.Ct. 2766] (*Dayton I*); see also *Pasadena City Bd. of Education* v. *Spangler* (1976) 427 U.S. 424, 434 [49 L.Ed.2d 599, 607, 96 S.Ct. 2697].)

California equal protection law, on the other hand, did not, before Proposition 1, require as great a showing of denial on the part of plaintiffs seeking court-ordered busing or pupil reassignment as do the federal courts under the United States Constitution (*Bustop, Inc.* v. *Los Angeles Board of Education* (1978) 439 U.S. 1380, 1381 [58 L.Ed.2d 88, 89-90, 99 S.Ct. 40]), so that rulings under the federal standard were neither controlling nor persuasive. (*Tinsley* v. *Palo Alto Unified School District, supra,* 91 Cal.App.3d 871, 879.) State decisional law, as derived from the equal protection clause of the California Constitution, recognized that *de facto* school segregation was actionable prior to the passage of Proposition 1. (*Crawford* v. *Board of Education* (1976) 17 Cal.3d 280, 295 [130 Cal.Rptr. 724, 551 P.2d 28] (*Crawford I*); *Jackson* v. *Pasadena City School Dist.* (1963) 59 Cal.2d 876, 882 [31 Cal.Rptr. 606, 382 P.2d 878].) In *Crawford I, supra,* the court noted that " '*it is the presence of racial isolation, not its legal underpinnings, that creates unequal education.*' " (*Id.,* 17 Cal.3d at p. 295, italics in original.)[3]

■ The differentiating factor between de jure and de facto segregation is the "purpose or intent to segregate." (*Keyes* v. *School Dist. No. 1, supra,* 413 U.S. 189, 208 [37 L.Ed.2d 548, 563]; *N. A. A. C. P.* v. *Lansing Bd. of Ed., supra,* 559 F.2d 1042, 1045.) ■ And one effect of Proposition 1 is to eliminate this distinction in cases where either court-ordered busing or pupil reassignment are sought as remedial devices. Now, a showing of de jure segregation is required before California courts may order those desegregation remedies. However, all other desegregation techniques may still be utilized by the courts to alleviate de facto segregation. As the court

---

[3]De facto segregation has been defined as segregation resulting from "factors, such as residential housing patterns, which are beyond the control of state officials." (*N. A. A. C. P.* v. *Lansing Bd. of Ed., supra,* 559 F.2d 1042, 1045.)

said in *Crawford II, supra,* 113 Cal.App.3d 633, 652, ". . . the effect of the constitutional amendment is to withdraw one desegregative technique from the state court's arsenal of remedies available to alleviate unintended nonpurposeful segregation, but to leave all other available techniques intact."

Proposition 1 has an additional impact upon California school desegregation law. Federal constitutional law, as expressed in *Milliken* v. *Bradley* (1974) 418 U.S. 717 [41 L.Ed.2d 1069, 94 S.Ct. 3112] limits the scope of an interdistrict remedy to cases in which an "interdistrict violation" is shown. (*Id.* at p. 752 [41 L.Ed.2d at p. 1095].) In contrast, California equal protection law provides for imposition of a multidistrict desegregation plan, where geographically feasible, even if de facto segregation is found in only one district. (*Tinsley* v. *Palo Alto Unified School Dist., supra,* 91 Cal.App.3d 871, 930-935.) Therefore, by equating the California equal protection clause with the 14th Amendment of the federal Constitution, Proposition 1 also alters state equal protection law by requiring those seeking interdistrict busing or pupil assignment, such as appellants herein, to show de jure segregation and meet the *Milliken* standards.

The trial court found Proposition 1 constitutionally valid, sustained respondents' demurrers, and subsequently entered an order dismissing appellants' fourth amended petition. An appeal was thereafter taken to this court and has been consolidated with a separate petition originally filed by appellants in the California Supreme Court.

After briefing in this case, the United States Supreme Court granted a hearing in *Crawford II, supra.* Because of the identity of issues presented, we have awaited the decision in *Crawford* v. *Los Angeles Board of Education* (1982) 458 U.S. 527, [73 L.Ed.2d 948, 102 S.Ct. 3211]), and now find that decision dispositive of the equal protection issues raised in the case at bench. Other issues, as will be seen, remain to be decided.

In *Crawford,* the court found Proposition 1 to be consistent with federal equal protection guarantees, explaining: "Proposition 1 does not inhibit enforcement of any federal law or constitutional requirement. Quite the contrary, by its plain language the Proposition seeks only to embrace the requirements of the Federal Constitution with respect to mandatory school assignments and transportation. It would be paradoxical to conclude that by adopting the Equal Protection Clause of the Fourteenth Amendment, the voters of the State thereby had violated it." (458 U.S. 527, 535 [73 L.Ed.2d 948, 955].)

The court catagorically rejected the contention, also made by appellants here, that Proposition 1 creates an "explicit racial classification" or imposes

a "race-specific" burden on minorities by creating a "dual court system," whereby the power of state courts to enforce the *state created right to desegregated schools* is limited while "other state created rights may be vindicated by the state courts without limitation on remedies." (*Id.*, at p. 536 [73 L.Ed.2d at p. 955].) The court concluded that: "Proposition 1 does not embody a racial classification. It neither says nor implies that persons are to be treated differently on account of their race. It simply forbids state courts from ordering pupil school reassignment or transportation in the absence of a Fourteenth Amendment violation. The benefit it seeks to confer - neighborhood schooling - is made available regardless of race in the discretion of school boards." (*Id.*, at p. 537 [73 L.Ed.2d at p. 956].) The court added: "Nor can it be said that Proposition 1 distorts the political process for racial reasons or that it allocates governmental or judicial power on the basis of discriminatory principle. . . . [A] 'dual court system' - one for the racial majority and one for the racial minority - is not established simply because civil rights remedies are different from those available in other areas. . . . It was . . . constitutional for the people of the State to determine that the standard of the Fourteenth Amendment was more appropriate for California courts to apply in desegregation cases than the standard repealed by Proposition 1." (*Id.*, at pp. 541-542 [73 L.Ed.2d at p. 959].)

Citing *Dayton Board of Education* v. *Brinkman* (1977) 433 U.S. 406 [53 L.Ed.2d 851, 97 S.Ct. 2766], the court also reiterated the principle that a "mere repeal of race related legislation or policies that were not required by the Federal Constitution in the first place" does not violate the equal protection clause. (*Id.*, at p. 538 [73 L.Ed.2d at pp. 956-957].) And distinguishing *Hunter* v. *Erickson* (1969) 393 U.S. 385 [21 L.Ed.2d 616, 89 S.Ct. 557], relied upon by appellants here, the court characterized Proposition 1 as a "mere repeal." (*Id.*, at p. 540 [73 L.Ed.2d at p. 958].) It noted: "By contrast, even on the assumption that racial minorities benefitted from the busing required by state law, Proposition 1 is less than a 'repeal' of the California Equal Protection Clause. As noted above, after Proposition 1, the State Constitution still places upon school boards a greater duty to desegregate than does the Fourteenth Amendment. . . . [¶] In short, having gone beyond the requirements of the Federal Constitution, the State was free to return in part to the standard prevailing generally throughout the United States. It could have conformed its law to the Federal Constitution in every respect. That it chose to pull back only in part, and by preserving a greater right to desegregation than exists under the Federal Constitution, most assuredly does not render the proposition unconstitutional on its face." (*Id.*, at pp. 541-542 [73 L.Ed.2d at p. 959].)

Turning to the claim that Proposition 1, even if facially valid, was enacted with an impermissible discriminatory purpose, we observe that the United

States Supreme Court adopted our state appellate court's resolution of the issue. While acknowledging that "a law neutral on its face still may be unconstitutional if motivated by a discriminatory purpose" (*id.*, at p. 544 [73 L.Ed.2d at p. 960]), the court found that Proposition 1 had no "racially disproportionate effect" upon racial minorities and observed "no reason to challenge the Court of Appeal's conclusion that the voters of the State were not motivated by a discriminatory purpose." (*Id.*, at p. 545 [73 L.Ed.2d at p. 961].) The court added: "The purposes of the Proposition are stated in its text and are legitimate, nondiscriminatory objectives. In these circumstances, we will not dispute the judgment of the Court of Appeal or impugn the motives of the State's electorate." (*Ibid.*)

Appellants claim that we are not bound by the United States Supreme Court's decision in *Crawford* v. *Los Angeles Board of Education, supra,* 458 U.S. 527 [73 L.Ed.2d 948]. Acknowledging that Proposition 1 was upheld against an equal protection challenge in *Crawford,* they argue that issues are presented in the case at bench which were not resolved in the Supreme Court's opinion, and so it is not dispositive here, since cases are not authority for propositions not considered. (*People* v. *Burnick* (1975) 14 Cal.3d 306, 317 [121 Cal.Rptr. 488, 535 P.2d 352]; *Brown* v. *Superior Court* (1982) 137 Cal.App.3d 778, 782 [187 Cal.Rptr. 324].)

More specifically, appellants first submit that *Crawford* did not address the issue of the discriminatory effect of Proposition 1 on the state's schools, but decided only that no impermissible "dual court" system had been created by the law. Appellants note that the court in *Crawford* characterized the equal protection issue as being whether "Proposition 1 employs an 'explicit racial classification' and imposes a 'race-specific' burden on minorities seeking to vindicate state created rights. By limiting the power of state courts to enforce the state created right to desegregated schools, petitioners contend, Proposition 1 creates a 'dual court system' that discriminates on the basis of race." (458 U.S. 527, 536 [73 L.Ed.1d 948, 955].) Our attention is drawn to a footnote in which the court added: " '[I]t is racial discrimination in the judicial apparatus of the state, not racial discrimination in the state's schools, that petitioners challenge under the Fourteenth Amendment in this case.' " (*Id.*, at p. 536, fn. 13 [73 L.Ed.2d at p. 955].)

We agree that in *Crawford* v. *Los Angeles Board of Education, supra,* 458 U.S. 527 [73 L.Ed.2d 948] the federal high court did not consider the specific claim, raised here by appellants, that Proposition 1 violates the 14th Amendment by perpetuating racial discrimination in the state's schools. Nevertheless we feel that the *Crawford* decision dictates resolution of this issue. The court's opinion, and its conclusion that Proposition 1 merely repeals rights not mandated by federal law and expressly embraces the re-

quirements of the 14th Amendment (458 U.S. 527, 537-538, 540-541 [73 L.Ed.2d 948, 955, 958-959]), can only be viewed as giving total approval to the constitionality of Proposition 1. The court determined that "Proposition 1 does not embody a racial classification" (*id.*, at p. 537 [73 L.Ed.2d 956]), and by stating that, "having gone beyond the requirements of the Federal Constitution, the State was free to return in part to the standard prevailing generally throughout the United States" (*id.*, at p. 542 [73 L.Ed.2d at p. 959]), the court found Proposition 1 generally consistent with equal protection guarantees.

The rationale employed by the court in deciding that Proposition 1 does not deny equal protection by creating a "dual court system," is, in our view, equally applicable to the contention that the amendment impermissibly encourages or sanctions racial segregation in the schools. The court found in *Crawford* that Proposition 1 adopts federal constitutional standards for all purposes (458 U.S. 527, 535 [73 L.Ed.2d 948, 955]), repeals certain state protections only to the extent that they exceed federal constitutional mandates, and accordingly does not discriminate against minority students in contravention of the equal protection clause. (*Id.*, at pp. 539-542 [73 L.Ed.2d at pp. 957-959].) ■ We are therefore constrained to conclude from *Crawford* that Proposition 1 generally does not tend to discriminate against minority school children at least insofar as constitutional principles of equal protection are involved.

In a closely related contention appellants next argue that *Crawford* did not decide a critical issue raised here: whether the amendment is unconstitutional *as applied* to the facts of the present case. Cited in support of this contention is the well-established principle that a law valid on its face may be unconstitutionally applied. (*Williams* v. *Illinois* (1970) 399 U.S. 235, 242 [26 L.Ed.2d 586, 593, 90 S.Ct. 2018]; *People* v. *Wingo* (1975) 14 Cal.3d 169, 180 [121 Cal.Rptr. 97, 534 P.2d 1001].) Appellants ask us to independently interpret the effect of Proposition 1 and find it unconstitutional as applied to the Ravenswood City School District.

First, appellants' characterize as "dead wrong" the Supreme Court's finding in *Crawford* that Proposition 1 "applies neutrally to 'pupil school assignment or pupil transportation' in general." (458 U.S. p. 538, fn. 18 [73 L.Ed.2d p. 956].) It is appellants' position that the interpretation of the effect of Proposition 1 in this state is a matter of California law (*Estate of D'India* (1976) 63 Cal.App.3d 942, 948 [134 Cal.Rptr. 165]), and that we hence retain authority to find that the amendment creates a racial classification despite the Supreme Court's contrary conclusion.

We disagree. ■ The Supreme Court did not fully construe Proposition 1 in deciding that it meets equal protection standards; rather, it found the

amendment nondiscriminatory in equal protection terms as a matter of constitutional law. State courts may be able to freely determine the scope and meaning of Proposition 1, but the United States Supreme Court's determination of constitutional questions such as this - whether a state enactment creates an impermissible racial classification - is binding upon us. (*Oregon v. Hass* (1975) 420 U.S. 714, 719 [43 L.Ed.2d 570, 575-576, 95 S.Ct. 1215]; *South Carolina* v. *Bailey* (1933) 289 U.S. 412, 420 [77 L.Ed. 1292, 1296, 53 S.Ct. 667].)[4]

Appellants also submit that even if Proposition 1 is facially valid and does not offend the equal protection principles in the Los Angeles area school districts considered in *Crawford,* it violates the 14th Amendment as applied to the midpeninsula schools here at issue. In so arguing, they point to a record which reveals in stark terms the manifest inferiority of the Ravenswood City School District Schools, the racial segregation evident in the schools, and the resulting illusory benefit of neighborhood schooling.

Their argument, however, fails to consider the sweeping nature of the opinion in *Crawford,* which reasoned that Proposition 1 was a "mere repeal" of additional constitutional rights previously granted by the state beyond that required by the federal constitutional law. In addition, the amendment was found to be uniform and consistent in its operation, that is, it could not be applied more discriminatorily in Ravenswood than in Los Angeles, and hence does not create a racial classification in violation of the 14th Amendment.

The court in *Crawford* also concluded, as had the California Court of Appeal, that Proposition 1 was not enacted with a "discriminatory purpose." (458 U.S. 527, 545 [73 L.Ed.2d 948, 961].) Again, appellants characterize this issue as one for the state courts to decide, and ask us to deviate from the ruling in *Crawford*: pointing to the greater evidence of segregation alleged in the present case, they claim that Proposition 1 was motivated by an intent to discriminate as applied to the Ravenswood City School District.

This characterization of the issue as one of state law is erroneous: while *Crawford* adopted the California Court of Appeal's conclusion that California voters were not motivated by a discriminatory purpose, the conclusion was based upon application of federal constitutional law principles. Our own view of the matter is hence irrelevant, and we need make no independent inquiry concerning it.

---

[4]And even if we were to independently decide that Proposition 1 perpetuates racial discrimination, we are bound by the conclusion in *Crawford* that the law cannot violate equal protection standards by specifically embracing them. (458 U.S. 527, 535 [73 L.Ed.2d 948, 955].)

Appellants also claim, as part of their equal protection argument, that Proposition 1 encourages rescission of existing court orders which require busing or pupil assignment as part of a desegregation plan to alleviate *de facto* segregation. This argument, not made in *Crawford v. Los Angeles Board of Education, supra,* 458 U.S. 527 [73 L.Ed.2d 948] is based upon paragraphs 2 and 3 of the amendment, which provide: "Except as may be precluded by the Constitution of the United States, every existing judgment, decree, writ, or other order of a court of this state, whenever rendered, which includes provisions regarding pupil school assignment or pupil transportation, or which requires a plan including any such provisions shall, upon application to a court having jurisdiction by any interested person, be modified to conform to the provisions of this subdivision as amended, as applied to the facts which exist at the time of such modification. [¶] In all actions or proceedings arising under or seeking application of the amendments to this subdivision proposed by the Legislature at its 1979-80 Regular Session, all courts, wherein such actions or proceedings are or may hereafter be pending, shall give such actions or proceedings first precedence over all other civil actions therein."

The contention seems to us theoretically meritorious but premature, since the action involves no prior desegregation order. ■ And since it is a well-settled principle that "courts will not reach constitutional questions 'unless absolutely necessary to a disposition' of the case before them. . . ." (*Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization, supra,* 22 Cal.3d 208, 233; see also *Bayside Timber Co.* v. *Board of Supervisors* (1971) 20 Cal.App.3d 1, 5-6 [97 Cal.Rptr. 431]), we decline to consider the issue in the abstract and instead await its resolution within the framework of an actual controversy. (*Amador Valley, supra; County of Nevada* v. *MacMillen* (1974) 11 Cal.3d 662, 674 [114 Cal.Rptr. 345, 522 P.2d 1345].)

■ Appellants and *amici* next claim that Proposition 1 was presented to the voters and adopted in violation of the "single subject" requirement of the California Constitution, article II, section 8, which provides that "An initiative measure embracing more than one subject may not be submitted to the electors or have any effect."

Appellants submit that Proposition 1 contravenes section 8 because it amends six different sections of the state Constitution, and extends beyond a single subject. They contend that, besides directly amending the equal protection provision of the California Constitution (art. I, § 7), the Proposition improperly impinges upon or violates five other state constitutional provisions: the provision granting "inalienable rights" -here, to equal education - of all persons (art. I, § 1); the right of state citizens to independent

state rights (art. I, § 24)[5]; the requirement that "all laws of a general nature have uniform operation" (art. IV, § 16, subd. (a)); the provision vesting judicial power in our state courts (art. VI, § 1)[6]; and the plenary power vested in the Legislature over public education (art. IX, §§ 1, 5, 6, 7.5 and 14).

Appellants' argument misconstrues the nature and scope of the "single subject" requirement. ■ Recently in *Amador Valley Joint Union High Sch. Dist. v. State Bd. of Equalization, supra,* 22 Cal.3d 208, our high court reiterated that article II must be "construed liberally," and is not violated by an initiative measure if "despite its varied collateral effects, all of its parts are 'reasonably germane' to each other." (*Id.,* at p. 230; see also *Fair Political Practices Com. v. Superior Court* (1979) 25 Cal.3d 33, 38 [157 Cal.Rptr. 855, 599 P.2d 46]; *Perry v. Jordan* (1949) 34 Cal.2d 87, 92-93 [207 P.2d 47].) In *Amador, supra,* 22 Cal.3d 208, the court concluded that the four elements of the initiative there under consideration were "reasonably germane to, *and* functionally related in furtherance of, a common underlying purpose, namely, effective real property tax relief." (*Id.,* at p. 230.) Thus, the single subject requirement is directed at insuring that an initiative has "one general object" or a "single scheme" (*id.,* at p. 230), and cannot be invoked to invalidate a proposition simply because it may peripherally touch upon more than one constitutional provision.

■ The several parts of Proposition 1 are reasonably germane and functionally related to a single, common underlying purpose: elimination of court-ordered pupil reassignment or transportation, unless required to remedy a 14th Amendment violation or voluntarily undertaken. We discern no violation of the single-subject requirement of article II, section 8.

■ Appellants also argue that the passage of Proposition 1 violated article XVIII, section 1, which provides that "[e]ach amendment shall be so prepared and submitted that it can be voted on separately." They propose that the phrase "Each amendment" in article XVIII, section 1, be read as referring to every constitutional provision to which an initiative refers; and, they assert, since Proposition 1 had an effect on six different sections of the California Constitution, each such section affected by the initiative should have been separately submitted to the voters.

---

[5]Article 1, section 24, states that the "Rights guaranteed by this Constitution are not dependent on those guaranteed by the United States Constitution. . . ."

[6]Appellants complain that under Proposition 1 California courts must defer to the decisional law of *all* federal courts when interpreting the federal Constitution regarding desegregation, whereas previously (under art. VI, § 1) state courts were not bound by the decisions of lower federal courts, even on federal questions.

This contention has no merit. ■ The requirement of article XVIII, section 1, is merely that each constitutional provision which is *directly* amended by an initiative measure must be separately submitted to the voters. If appellants' interpretation of the separate submission requirement were adopted, each constitutional provision which could—in however obscure and perhaps unanticipated a fashion—be influenced by an initiative, would have to be submitted to the voters. Article XVIII, section 1, is clearly not intended to produce such an unworkable result.

■ Here, only one part of the Constitution, article I, section 7, was actually amended by Proposition 1. Since that amendment was placed before the voters for approval, the separate submission requirement of article XVIII, section 1, was fully satisfied.

■ The forceful amicus brief of the California League of Women Voters makes a related argument: that only one constitutional amendment (art. I, § 7) was mentioned as being amended in the voters pamphlet, while in fact six sections of the Constitution were "amended" by Proposition 1, thereby violating Elections Code provisions which require that the ballot pamphlet contain each constitutional provision "repealed or revised by each state measure" (§ 3570), as well as impartial analysis of each amendment by the Legislative Analyst (§ 3572).[7]

Again, however, we think the argument ignores the plain language and clear intent of the governing statutes. Sections 3570 and 3572 require that a voter's pamphlet include a "copy" and ballot summary for each initiative measure presented and each constitutional provision being amended, and not an inclusive legal discussion of each *part* of the state Constitution which *might* be influenced by the initiative. The voter's pamphlet here in question contained a copy of the amended version of article I, section 7, as well as an analysis which adequately described the impact of Proposition 1 and hence complied with the statutory requirements.

---

[7]Section 3570 provides in relevant part: "The ballot pamphlet shall contain. . .

"(b) A copy of the specific constitutional or statutory provision, if any, which would be repealed or revised by each state measure; . . . .

"(e) Tables of contents, indexes, art work, graphics and other materials which the Secretary of State determines will make the ballot pamphlet easier to understand or more useful for the average voter."

Relevant portions of section 3572 read: "The Legislative Analyst shall repare an impartial analysis of the measure describing the measure . . . . The analysis shall be written in clear and concise terms which will easily be understood by the average voter . . . analyses may contain background information, including the effect of the measure on existing law and the effect of enacted legislation which will become effective if the measure is adopted, and shall generally set forth in an impartial manner the information which the average voter needs to understand the measure adequately. . . ."

Appellants further claim that the ballot title and summary prepared for Proposition 1 by the Attorney General are deficient. Article II section 10, subdivision (d) directs the Attorney General to prepare a summary of the chief purposes and points of each proposal submitted to the voters. (See also Elec. Code, § 3572; Gov. Code, § 88003.) The ballot pamphlet must contain a copy of the Attorney General's summary. (Elec. Code, § 3571.)

Ballot measure summaries prepared by the Attorney General have, on occasion, come under judicial scrutiny. Most recently, in *Amador Valley Union High Sch. Dist.* v. *State Bd. of Equalization, supra,* 22 Cal.3d 208, the court was called upon to consider the title and summary prepared for Proposition 13, and stated that "the title and summary need not contain a complete catalogue or index of all of the measure's provisions and 'if reasonable minds may differ as to the sufficiency of the title, the title should be held sufficient.' [Citation.] As a general rule, the title and summary prepared by the Attorney General are presumed accurate, and substantial compliance with the 'chief purpose and points' provision is sufficient. [Citation.]" (*Id.*, at p. 243; see also *People* v. *Frierson* (1979) 25 Cal.3d 142, 187 [158 Cal.Rptr. 281, 599 P.2d 587].)

It has been consistently held that a ballot summary need not contain a reference to "auxiliary or subsidiary" matters; a statement of the major objectives or "chief points" of the measure is satisfactory. (*Perry* v. *Jordan* (1949) 34 Cal.2d 87, 94 [207 P.2d 47]; *Brown* v. *Jordan* (1938) 12 Cal.2d 75, 84 [82 P.2d 450]; *Vandeleur* v. *Jordan* (1938) 12 Cal.2d 71, 73 [82 P.2d 455]; *Santa Cruz Oil Corp.* v. *Milnor* (1942) 55 Cal.App.2d 56, 61 [130 P.2d 256].) In *Fox etc. Corp.* v. *City of Bakersfield* (1950) 36 Cal.2d 136, 145 [222 P.2d 879], the court noted: " 'The title need not contain a summary or index of all of the measure's provisions. Within certain limits what is or what is not an important provision is a question of opinion. Within those limits the opinion of the Attorney General should be accepted by this court.' " Moreover, "[o]nly in a clear case should a title . . . [or summary] be held insufficient." (*Epperson* v. *Jordan* (1938) 12 Cal.2d 61, 66 [82 P.2d 445].)

However, a ballot summary cannot be misleading. (*Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization, supra,* 22 Cal.3d 208, 243; *Clark* v. *Jordan* (1936) 7 Cal.2d 248, 251 [60 P.2d 457, 106 A.L.R. 549].) It must reasonably inform the voter of the character and real purpose of the proposed measure. (*Boyd* v. *Jordan* (1934) 1 Cal.2d 468, 472 [35 P.2d 533].)

The Attorney General's title and summary of Proposition 1 states: "School Assignment and Transportation of Pupils. Legislative Constitution-

al Amendment. Amends Section 7(a) of Article I of the Constitution to provide that nothing in the California Constitution imposes upon the State of California or any public entity, board, or official any obligations or responsibilities which exceed those imposed by the United States Constitution with respect to the use of pupil school assignment or transportation. Provides for modification of existing judgments, decrees, writs or other court orders to conform to the provisions of this subdivision. Provides that governing boards of school districts may voluntarily continue or commence a school integration plan. Financial impact: Indeterminable. Potential savings if school districts elect to reduce or eliminate pupil transportation or assignment programs as a result of this measure."

In our opinion this ballot summary adequately enumerates the "chief points" of the initiative as required by article II, section 10, subdivision (d). (*Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization, supra,* 22 Cal.3d 208, 243-244.)

Lastly, however, we hold that the trial court erred in wholly sustaining respondents' demurrer to the fourth amended petition, because remedies other than pupil assignment and transportation are still available to cure alleged *de facto* segregation in the Ravenswood City School District, and are not foreclosed either by the pleadings or by the decision in *Crawford.* Thus, while in the absence of any claimed *de jure* segregation Proposition 1 prohibits courts from ordering busing or student reassignment as a means of achieving equality of education (*McKinney* v. *Board of Trustees* (1982) 31 Cal.3d 79, 93 [181 Cal.Rptr. 549, 642 P.2d 460]), *de facto* segregation may still be attacked by any other legal means. As explained by our high court in *McKinney, supra,* ". . . the amendment neither releases school districts from their state constitutional obligation to take reasonably feasible steps to alleviate segregation regardless of its cause, nor divests California courts of authority to order desegregation measures other than pupil school assignment or pupil transportation. [Citation.] When a school district fails to fulfill its state constitutional obligations, we retain our power to compel, for example, school closure, school site selection, creation of special 'magnet schools,' curriculum changes, or other steps to overcome the adverse effects of school segregation." (*Id.,* at pp. 92-93.) And in *Crawford* v. *Los Angeles Board of Education, supra,* 458 U.S. 527, 535 [73 L.Ed.2d 948, 955], our federal high court observed that: "The state courts of California continue to have an obligation under state law to order segregated school districts to use voluntary desegregation techniques, whether or not there has been a finding of intentional segregation.[8] The

---

[8]We feel obliged to express some degree of perplexity as to how *voluntary* activity can be *compelled.* We add our indorsement of the principle that school districts continue to have the broadest discretion to act to remove the pernicious effects of segregation, de facto as well as de jure.

school districts themselves retain a state law obligation to take reasonably feasible steps to desegregate, and they remain free to adopt reassignment and busing plans to effectuate desegregation." 458 U.S. 527, 535-536 [73 L.Ed.2d 948, 955].)

 The fourth amended petition for writ of mandate requests that the respondent school districts be ordered to adopt a "reasonably feasible" plan to alleviate racially segregated schools. Techniques other than busing and pupil reassignment are obviously still within the authority of the state courts to impose (*Crawford* v. *Los Angeles Board of Education, supra,* 458 U.S. 527, 535-536 [73 L.Ed.2d 948, 955]; *McKinney* v. *Board of Trustees, supra,* 31 Cal.3d 79, 93), although we agree with appellants that one tool arguably useful in achieving desegregation has been blunted by passage of Proposition 1.

Accordingly, while appellants' motion for partial summary judgment was properly denied, we find error in the trial court's order sustaining respondent's demurrer without leave to amend. (Cf. *Golden* v. *Dungan* (1971) 20 Cal.App.3d 295, 300 [97 Cal.Rptr. 577].)

The judgment sustaining respondent's demurrers and dismissing appellants' petition is reversed. The order denying appellants' motion for partial summary judgment is affirmed. The case is remanded to the trial court for proceedings consistent with the views expressed herein. Costs on appeal in both actions are awarded to appellants.

Racanelli, P. J., and Elkington, J., concurred.

Petitions for a rehearing were denied January 20, 1984, and the judgment was modified to read as printed above. The petitions of all appellants and of respondents Palo Alto Unified School District and Ravenswood City School District for a hearing by the Supreme Court were denied April 4, 1984.